## MYERS vs. BURNS.

A covenant to repair, in a lease for a term of years, is a covenant which runs with the land, and binds the assignee of the covenantor.

Where a lease contained a covenant on the part of the lessors, to keep the buildings in good repair during the term ; *Held*, in an action for rent, by the assignee of the lessors against an assignee of the unexpired term, that the damages which the defendant had sustained by the omission of the plaintiff to make the necessary repairs, might be recovered as a counter-claim in such action.

In putting a construction upon a contract, due regard must be had to the subject of it, the condition of the parties to it, and the objects and purposes they designed to accomplish by making it.

Where a lease of a *hotel* contained a covenant by the lessors " to keep the said hotel and premises in good necessary repair" during the term, at their own proper charge and expense; *Held* that this obliged the lessors to make and maintain the premises in a state fitted for the uses to which they were appropriated. That rooms furnished with flues which were unfitted to carry off the smoke and gas, not being suitable for human occupation, were not in the condition contemplated and intended by the parties to the lease.

*Held also*, that the tenant was entitled to recover of the lessors the fair value of the use of such rooms for the time they were unoccupied by reason of the defect in the flues.

And that he might also, after due notice of the defect to the lessors, requesting them to make the repairs, and waiting a reasonable time, make the repairs himself, and fix the liability of the lessors, to the amount expended.

In actions upon covenants respecting real estate, the general rule is that the injured party shall recover the damages which necessarily and directly result from the breach.

The tenant has his option to make the repairs, and recover from the landlord the expense incurred ; or, he may omit to make the repairs himself, and seek his recompense by an action for the damages.

In making such repairs the tenant is not bound to use precisely the same materials as were originally used. He is not to ignore and reject all improvements, and new methods and materials, and adhere to old and obsolete customs, If he employs a competent mechanic, who uses suitable materials, and the work is seasonably and properly done, he is entitled to be reimbursed what he has expended.

JAMES MYERS, the plaintiff, prosecuted this action against the defendant James L. Burns, who was his tenant of certain premises in the city of Brooklyn, to recover $1000, balance of a quarter's rent due on the 1st of August, 1858. The lease bears date on the 28th May, 1856, and was made be-

tween Rufus Litchfield and John Ketchum of the first part, and Edwin F. Chase and George F. Whitney of the second part, for the term of eight years and five months from the 1st day of June ensuing the date, reserving rent, to wit, $6000 for the first five months of the term, and $8000 for each of the remaining years, payable quarterly on the 1st days of February, May, August and November in each year. The instrument contained a covenant by which the parties of the first part covenanted and agreed to keep the hotel and premises in good necessary repair during the term, at their own proper charge and expense. And it was also mutually agreed as a condition, " that if at any time during the term the building upon the premises should be damaged by accidental fire to such an extent as to render the same unfit for the uses of a first class hotel, or so as to materially impair the value thereof," then followed the usual clause as to the abatement of the rent, &c. The plaintiff had become the grantee of the premises, with the right to the rents, and the defendant had also become the assignee of the unexpired term for years, with the duty and obligation of paying the rents reserved in the lease. The answer claimed damages for a breach of the covenant to repair, and alleged that the defendant had during the quarter actually expended $908.80 in making the necessary repairs, and had suffered loss by the default and omission of the landlord in not making certain other repairs exclusive of those made by the defendant. The action was tried at the Kings circuit, before Justice LOTT and a jury, when the defendant had a verdict, to set aside which the plaintiff brought this appeal.

*C. A. Nichols,* for the plaintiff.

*G. T. Jenks,* for the defendant.

*By the Court,* BROWN, J. The questions involved are those raised and presented by the exceptions taken to the

Myers *v.* Burns.

charge of the judge, and I shall proceed to examine them, briefly, in the order in which they are presented in the points made by the appellant. The judge charged the jury, in the second paragraph, that " the defendant was entitled to recover of the plaintiff, as a counter-claim, the damages which he had sustained by reason of the loss of the rooms specified in the answer, so far as caused by a defect in the flues of the chimney, without reference to the cause of the defect; and that the fair value of the use of those rooms for the time they were unoccupied by reason of such defect, was the amount to which the defendant was entitled. To this part of the charge the defendant's counsel excepted. His objection is two-fold: First. That there is no personal covenant of the plaintiff which gives the defendant a right of action against him. True, the plaintiff primarily made no personal covenant with the defendant. They are neither of them parties to the lease. Their obligations, the one to pay the rent and the other to keep the demised premises in repair, result from other considerations. There are three relations at common law which might exist between the lessor and the lessee and their respective assignees. First. Privity of contract, which is created by the contract itself, and subsists forever between the lessor and lessee. Second. Privity of estate, which subsists between the lessee or his assignee in possession of the estate and the assignee of the reversioner. And thirdly. Privity of contract and estate, which exists when both the term and the reversion remain in the original covenantors. A covenant to repair is a covenant which runs with the land, for it affects the estate of the term and the reversion in the hands of any person that has it. (*Buckley* v. *Pick*, 1 *Salk.* 317. *Spencer's case*, 5 *Rep.* 16.) As assignees of grantees or lessees are bound by all covenants real annexed to the estate granted or leased and which run with the land, so they are entitled to the benefit of all such covenants as are entered into by grantors or lessors, and may maintain an action on them. (1 *Inst.* 384.) The 23d section of the act concerning estates

for years and at will &c. (1 *R. S.* 735) gives the grantees of any demised premises or of the reversion thereof, the assignees of any lessor, and the heirs and personal representatives of the lessor, grantee or assignee, the same remedies for the non-performance of any agreement in the lease as their grantor or lessor might have had if such reversion had remained in such lessor or grantor. And the 24th section declares that the lessees of any land, their assigns or personal representatives, shall have the same remedy by action or otherwise against the lessor, his grantees, assignees, or his or their representatives, for the breach of any covenant or agreement in the lease, as such lessee might have had against his immediate lessor, except covenants against incumbrances or relating to the title or possession of the premises." Upon these authorities there can be little doubt that the judge was right in saying to the jury that the damages which the defendant had suffered by the omission of the plaintiff to make the necessary repairs, he might recover as a counter-claim in this action.

The plaintiff's second objection to the proposition of the charge related to the breach of the covenant to repair. It is this: "The covenant to repair does not require the lessor to alter the construction of the house. The rent reserved was the consideration for the use of the house in the condition in which it was demised." The charge does not in terms or by implication convey the idea that there was any obligation of the lessor to alter the construction of the house. The breach complained of was a defect in the flues in certain rooms in the house looking out upon Hicks street. The proof showed there were stoves in three of the rooms and a grate in one of them, when the defendant went there. When fires were kindled in them the flues would not draw, or conduct away the gas and smoke, which issued out into the rooms and rendered them in a measure uninhabitable and useless during the season when fires were necessary. In putting a construction upon a contract due regard must be had to the subject of it,

Myers *v.* Burns.

the condition of the parties to it, and the objects and purposes they designed to accomplish by making it. The subject of the present contract is a large hotel. The premises were suitable for nothing else. It was the interest as well as the design of the lessors and the lessees that it should be kept as a first class hotel, for so it is spoken of in the lease. It was equally the interest as well as the intention that it should be kept at all times during the term in good necessary repair, and a covenant to that effect was inserted in the lease ; because a building with all its rooms, passages and appurtenances for warmth, light, ventilation and pure air, in good repair, is a necessary condition of a first class hotel. Suffered to go out of repair and fall into decay, it could acquire no new business, and such business as it had could not be retained. The obligation to see that this condition was fulfilled at all times during the term the lessors took upon themselves, and doubtless provided for it in the amount of the rent reserved. They may not have been willing to intrust a duty so essential to the value and the preservation of their property to any one else. The contract was not to keep it in the same repair as it then was, nor to maintain it in good repair, ordinary wear and tear and damage by the elements excepted. There was no qualification to the lessors' engagement. They were " to keep the said hotel and premises aforesaid in good necessary repair, during the term of eight years and five months, at their own proper charge and expense." The word repair, (which signifies restoration to a sound state, after decay or injury,) used in connection with the word keep, (one of the significations of which is to maintain,) can mean nothing else than that the premises were to be made and maintained in a state fitted for the uses to which they were appropriated. Good and necessary repair expresses the condition they were to be in at all times during the continuance of the term. No one doubts but the four rooms on Hicks street were out of repair ; for no one can doubt that in a climate like ours, where fire is a necessary comfort nine

months in the year, rooms with flues which were unfitted to carry off the smoke and gas were not fitted for human habitation, and therefore not in the condition contemplated and intended by the parties to the lease. *Beach* v. *Crain,* (2 *Comst.* 86,) was an action for a breach of covenant. The plaintiff granted to the defendant a right of way over his land, and covenanted to erect a gate at the terminus. The defendants covenanted, in the same instrument, to make all necessary repairs to the gate. The plaintiff erected the gate, and it was removed by some unknown person. The question was whether under the covenant the defendants were bound to restore the gate. The court of appeals adjudged the reasonable construction of the contract to be that the covenantors were bound to make not only ordinary repairs, but all that were necessary to keep up the gate, fit for use and for the purpose intended, and if removed without the knowledge of the covenantee, or destroyed in whole or in part by dilapidation or accident, they were to replace and repair it. The terms of the covenant (it will be observed) were to make all repairs that were necessary. In the present case, the covenantors were to keep the hotel and premises in good necessary repair at their own proper charge and expense during the term ; language implying quite as much if not more in respect to the hotel than that in respect to the gate at the terminus of the road.

The counsel for the plaintiff also takes exception to the measure of damages indicated in the charge of the judge, who said the defendant was entitled to the fair value of the use of the rooms for the time they were unoccupied by reason of the defect in the flues. It is argued that the measure of damages in the event of liability would have been the cost of repairing. This is quite true if the tenant had chosen to fix the liability of the landlord to this measure, by request, due notice, and waiting a reasonable time, and doing the work himself, and he has not been deprived of the beneficial use of the premises in the mean time. It is also said that the broadest

Myers *v.* Burns.

measure of damages, when the grantee recovers for the loss
of a portion of the granted premises, is the proportion of
the consideration paid, which the lost portion bears to the
whole premises included in the grant. In an action for a
breach of the covenant of warranty, or for quiet enjoyment,
when there is a recovery and eviction of a portion of the
premises by title paramount, the measure of damages certainly
is a just proportion of the consideration money, with the in-
terest and costs incurred in defending the title. But these
rules do not necessarily exclude all others applicable to the
various cases which arise upon actions of covenant in respect
to real property. The general rule is, that the injured party
is to recover the damages which necessarily and directly re-
sult from the breach. The tenant has his option to make the
repairs and recover the expenses incurred from the landlord,
or he may omit to make the restoration and repair himself,
and seek his recompense by an action for the damages. This
must be so, from the nature of things, because there must
be many cases in which the first remedy would be beyond the
ability and out of the power of the tenant, and unless the lat-
ter mode of recompense was left open to him he would be
remediless. It is a well established rule that upon a covenant
to repair, the covenantor is bound to rebuild a house accident-
ally destroyed by fire, or thrown down by enemies during his
term. (*Woodfall's Land. and Ten.* 326, *and the cases re-
ferred to in the margin.*) Let us suppose that the present
lease omitted the provision for an abatement of the rent in
case the premises became unfit for the uses of a first class
hotel, in consequence of an accidental fire. There would
then have been a covenant by the landlord to keep in good and
necessary repair generally. And under the rule to which I
have referred, he would have been bound to rebuild the hotel,
in the event of its destruction by accidental fire during the
term. Suppose he had omitted and neglected to do so, could
he have maintained an action for the rent reserved, in the
face of this breach of his covenant? Could he, in the event

of an action brought against him for a breach of the cove-
nant, have defeated the action of the tenant, or remitted and
limited his recovery to mere nominal damages, because it was
his duty to rebuild after request and notice to the landlord,
and restore the premises to their original condition, and then
bring his action upon the covenant and recover as damages
for the breach, the cost and expenses of rebuilding and res-
toration?   Where the demised premises are of great value,
as in the present case, there are few tenants who could com-
ply with any such rule, and its existence would in many
cases defeat all remedy by the tenant under the covenant to
repair.   In the case of *Beach* v. *Crain, (supra,)* the court
adjudged that the proper measure of damages upon the cov-
enant to make necessary repairs to the gate, after its remo-
val or destruction, is not the costs of rebuilding, but the
actual injury sustained by the covenantee upon his lands.
The charge of the judge in the case under consideration was
entirely in conformity with this adjudication.   The court, in
the third paragraph of the charge, also said, "The defen-
dant, after serving the notice of the 10th May on the plain-
tiff, and waiting for time to make the repairs required, was
justified on the plaintiff's failure to do so or to give any no-
tice of his intention to make them, in proceeding to make,
and in making, the necessary repairs made by him; and that
the defendant was entitled to recover the several items for
such necessary repairs mentioned in the bills put in evidence,
excepting therefrom such portion of the bill of Hudson as
the jury should find had been charged for painting the hall
walls, not previously painted; and excepting the items in
red ink not claimed and deducted from the bills."   To this
part of the charge the plaintiff's counsel took no exception,
and I therefore decline to consider the point he now makes
upon it.   The court, in the same paragraph, further stated
to the jury "that it did not appear what part of the work,
labor and materials charged in the bill, was for painting those
walls," and then after referring to the testimony as to that

Myers *v.* Burns.

work, instructed the jury that "they must determine, by the means furnished them by the evidence, what portion of this work, labor and materials were expended in painting such walls." To which last instruction the plaintiff's counsel excepted. The hall walls referred to had been whitened and not painted at the time of the execution of the lease, and on that account it was thought by the judge the plaintiff was not chargeable with the expense of painting them. The price of the work was included in the bill of the witness George N. Hudson, which was produced on the trial. And the testimony to which the judge referred was this bill, and evidence that some of the items did not include work done on these walls, and some evidence in regard to the size of them. The judge's task in regard to this part of the case, was well performed when he told the jury to make no allowance for the walls, and referred their attention to the evidence, such as it was, which might help them to make the requisite deduction. The court also charged "that the defendant was entitled to recover the full expense of the zinc paint, although it was more expensive than the description of paint originally employed, it appearing that it was more durable and a better material than white lead." To this also the counsel for the plaintiff excepted. The witness Hudson, who was examined upon this part of the case, was not able to say what kind of paint was originally used upon the walls, lead or zinc. He used zinc, which is more expensive, (about 15 per cent more,) and more durable than lead. Surely the defendant· was not held, in making these repairs, to use precisely the same materials as were originally used. He was certainly not to ignore and reject all improvements and new methods and materials, and adhere to old absolete customs. The repairs were to be made, and if he employed a competent mechanic who used suitable materials, and the work was reasonably and properly accomplished, he was entitled to be reimbursed what he had expended. This was substantially what the judge said.

I do not think it worth while to elaborate this argument further. I may have omitted to notice some other points made by the plaintiff's counsel, but they are not material to the present inquiry.

The judgment should be affirmed.

[KINGS GENERAL TERM, February 11, 1861.  *Emott, Lott* and *Brown*, Justices.]