## WINTERFIELD vs. STAUSS.

*Injunction.* — *Jurisdiction of justice of the peace in cases involving questions of title to land.*

1. Equity will not restrain the prosecution of an action before a justice of the peace, as for an "unlawful and forcible detainer" (under ch. 151, R. S.), where it appears either that such action cannot be maintained for want of jurisdiction in the justice, or that the facts on which the injunction is sought may be successfully set up as a defense to such action.

2. DIXON, C. J., is of opinion, (1) That no action involving the question of title to land can be tried in a justice's court; but that, where defendant is a lessee, the question whether plaintiff has succeeded to the rights of the original lessor is not properly a question of title to land. (2) That the summary remedy provided by ch. 151, R. S., for recovering possession of land before a justice of the peace, is not applicable to the case of a peaceful entry by defendant, under color of title in himself, or as tenant of some person other than the plaintiff or his assignor.

3. The cases of *Savage v. Carney* (8 Wis. 162), and *Jarvis v. Hamilton* (16 id. 574), and others, discussed.

APPEAL from the Circuit Court for *Milwaukee* County.

In November, 1868, *Stauss*, as guardian of Herman Dierolff, an insane person, brought an action before a justice of the peace in the city of Milwaukee, against one Boeshaar, under ch. 151, R. S., to obtain restitution of a certain tenement; alleging that said Dierolff, on the 5th of August, 1868, was the owner and lawfully possessed of said tenement, and that Boeshaar, on that day, made unlawful entry thereupon, and that he still continued "unlawfully to hold, and with force and

strong hands to detain," the same from said complainant. Thereupon the plaintiff brought this action to restrain the prosecution of said action of unlawful detainer. The complaint herein avers facts to show, in substance, that Boeshaar entered peaceably upon the possession of said tenement under a lease from plaintiff; that plaintiff, at various times between February and October, 1865, while said Dierolff was insane, and confined in the state hospital for the insane at Madison, had advanced moneys, amounting to $400, for the support of Henriette Dierolff, wife of said Herman ; that (acting under legal advice and believing that he thereby acquired a lien) he took a mortgage on said tenement from Mrs. Dierolff, to secure said advances ; that, in October, 1866, he sold said tenement at public sale under a power of sale in the mortgage, and became the purchaser at said sale, for $451.75 (the amount of the mortgage debt and expenses of sale), he being the highest and best bidder ; that he had expended upon said tenement in repairs and improvements, in removing it from one piece of leased ground to another at the request of Mrs. Dierolff, in paying rent for such leased ground, and taxes, the further sum of $209 ; that the original value of said tenement was only $525 ; that, on the 4th of June, 1868, Mrs. Dierolff, of her own accord, removed from said tenement (which she had until that time continued to occupy as a homestead), and had ever since continued to reside elsewhere ; that, on the 13th of the same month, Herman Dierolff was discharged from the hospital nearly cured of his insanity ; that, on the 30th of July following, being fully informed of the above facts, and being then of sound mind, said Herman executed a bill of sale of said tenement to plaintiff, for the consideration of ten dollars paid to said Herman, as in said bill expressed ; that, by reason of the premises, plaintiff, from said 30th of July, was, and still continues to be, sole owner and possessor of said tenement, subject only to the rights of

Boeshaar as his tenant; that, on the 8th of August, 1868, he let said tenement to Boeshaar for one year, at the rate of $12.50 per month, and the latter went immediately into possession under such lease, and had paid the rent to the 8th of December, 1868. The complaint then alleges, in substance, that *Stauss*, on the 23d of June, 1868, with knowledge of the above recited facts, so far as they had occurred prior to that time, petitioned to be appointed guardian of said Herman Dierolff; that, on the 4th of August, 1868, he took a mortgage of said tenement from said Herman · and wife, to secure the payment of $500 in said mortgage mentioned; that, on the 8th of August, said Herman Dierolff left this state and went to Illinois, and has not since returned; that, in October, 1868, *Stauss* was nevertheless appointed guardian of said Herman, and pretends to have duly taken upon him that office, and to be acting as such guardian; that, when he commenced said suit as for an unlawful detainer, he well knew that Boeshaar was in possession of said tenement under a lease from plaintiff, yet he did not make plaintiff a defendant therein; that he prosecutes said suit for the purpose of injuring and oppressing the plaintiff, etc.

The circuit court, upon the complaint, granted a temporary injunction, restraining the prosecution of said action of unlawful detainer; and afterward refused to dissolve such temporary injunction. From this order defendant appealed.

*Mason G. Smith* and *H. C. Runkel*, for appellant:

1. Equity will not interfere by injunction where there is a complete defense at law. Willard's Eq. Jur. 347; *N. Y. Dry Dock Co. v. Am. Life Ins. Co.*, 11 Paige, 384; *Mitchell v. Oakley*, 7 id. 68; 3 Chand. 34. 2. All the questions raised by the complaint in this action may be tried and adjudicated by the justice in the action of *Stauss* against Boeshaar. *Savage v. Carney*, 8 Wis. 162; *Jarvis v. Hamilton*, 16 id. 574.

*E. Fox Cook*, for respondent, contended that the plaintiff had no right to control the defense in the action against Boeshaar; and that the issues presented by the complaint in this suit could not be tried in that action. To the point that a suit in equity was the proper mode of determining these issues, he cited *Rogers v. Cross*, 3 Chand. 38; 2 Story's Eq. Jur. § 1526; 8 How. Pr. 168; 3 Chand. 196.

DIXON, C. J. If, upon the facts stated in the complaint, and shown by the exhibits annexed to it, the defendant, *Stauss*, can maintain his action of unlawful detainer commenced before the justice of the peace, then this action cannot be maintained, for the reason that the facts relied upon for that purpose may be set up by the plaintiff in the name of his tenant, the defendant in the unlawful detainer action, as matters of defense thereto, and the same may be heard, tried and determined by the justice of the peace. The plaintiff does not allege, and it cannot, under the circumstances, be presumed, that the tenant refuses to allow him to make such defense.

If, on the other hand, it is clear, upon the facts stated in the complaint, that the action of unlawful detainer cannot be maintained by the defendant, then the plaintiff has no reason to complain. He then needs no process of injunction to restrain the action, which is the only remedy he seeks.

A repetition of the facts, which are somewhat numerous, with regard to the plaintiff's claim of title and right of possession of the tenement, a dwelling-house, for which the action of unlawful detainer was brought, is deemed unnecessary. It is enough to say that such claim is made in undoubted good faith, and that the plaintiff, in like good faith, was let into or took possession of the dwelling, as owner, with the assent, or at least without any opposition or objection on the part of the only person who could at that time set up or claim any title or interest or right of possession in hostility to him. It is

alleged that Mrs. Herman, knowing the plaintiff's claim of title thereto, removed, of her own accord, from the house, and that the plaintiff afterward, the same being vacant, leased it to his tenant, Boeshaar, who entered and has since continued in the occupancy thereof.

Under these circumstances, it seems very clear to me that the action of unlawful detainer cannot be maintained, but that the defendant, if he wishes to obtain the possession, must resort to his action of ejectment.

That the summary remedy furnished by the statute (R. S. ch. 151) for recovering the possession of land before justices of the peace is not one in which the title to the premises can be brought in question, and, consequently, not a substitute for the action of ejectment, was long ago decided by this court. *Gates v. Winslow*, 1 Wis. 650; *Ferrell v. Lamar*, id. 8. The doctrine of those cases, as to the extent and application of the remedy, is the same in all the states, the statutes in each embracing, in substance, the provisions of the old English statutes, and having the same intent, namely, to prevent and punish acts which endanger the public peace, and to provide for the summary dispossession of tenants holding over after the expiration of their terms, or contrary to the conditions or covenants of the leases or agreements under which they entered. Cases of the latter kind are provided for by the twelfth section of the act; and, in those cases, of course, no question of title can arise, since the tenant is estopped to deny the title of his landlord. The only inquiry in them is as to whether the conventional relation of landlord and tenant exists; and, if it does, then whether the tenant is holding over after the expiration of his term, or contrary to the covenants or conditions of his lease. It is in cases of this kind that the remedy of unlawful detainer may be resorted to, and it can be extended to no other. The other two classes of cases to which the statute applies are forcible entries and forcible detainers. Cases of the first kind, called

forcible entries, where there may also be a forcible detention, are familiar enough. Those of the second kind, or forcible detainers, may not be quite so common. These last arise where there has been surreptitious and wrongful or unlawful entry, though without force, which has been followed by a detention with force and a strong hand. As if a man were to enter the unoccupied house or premises of another in the night-time, or in the day-time, during the temporary absence of the owner, and on his return should refuse to deliver up the possession, but should detain the same with force and threats of violence, that would constitute a forcible detainer. The owner or prior occupant, upon showing his previous peaceful and undisputed possession, the surreptitious and wrongful entry, and subsequent detention by force, would be entitled to oust the offender, under the provisions of this statute. And the same remedy may doubtless exist in other cases, though the circumstances of the entry may differ, provided it is followed by a forcible* detention against the person whose prior peaceful possession has been wrongfully invaded.

"On this subject, the law is," says Chief Justice SAV-AGE, "that the same circumstances of violence or terror which will make an entry forcible, will make a detainer forcible also ; and whoever keeps in the house an unusual number of people, or unusual weapons, or threatens to do some bodily hurt to the former possessor, if he dare return, shall be adjudged guilty of a forcible detainer, though no attempt be made to re-enter." *The People v. Pickert*, 8 Cow. 232. And, in *The People v. Anthony*, 4 Johns. 201, KENT, Ch. J., says : "On an indictment for a forcible entry and detainer, the petit jury may find the defendant guilty of the detainer only, for a writ of restitution will equally go, as if the conviction had reached the whole indictment, and the assessment of the damages will be in proportion to the degree of guilt or injury." See also *Foster v. Kelsey*, 36

Vt. 199. And, where the entry was obtained by stealth or stratagem, or without real violence, and the party entering evinced his purpose in having entered to have been the forcible expulsion of the party in possession, and it was followed up by actual expulsion by means of personal threats or violence or superior force, this has been held to amount to a forcible entry. *Willard v. Warren,* 17 Wend. 257, and cases cited; *People v. Smith,* 24 Barb. 16; *Commonwealth v. Shattuck,* 4 Cush. 141; *Saunders v. Robinson,* 5 Met. 343. But, in these proceedings, the gist of the action, and that which gives a justice of the peace jurisdiction, is the force, either in the entry or the detainer, or in both. The object of the statute is to prevent and punish the use of forcible and violent means in such cases, irrespective of the question of actual title; and, where these do not exist, the action cannot be maintained. If, therefore, the action brought presents a mere question of title between the parties and of their consequent rights of possession, a justice of the peace has no jurisdiction. Such I understand to be the character of the proceeding here complained of. It is not an action by a landlord against his tenant, where unlawful detainer may be maintained, nor an action for a forcible entry or a forcible detainer. It is a plain, straightforward attempt to apply the summary remedy given by the statute, as a substitute for ejectment, to try title. It is an attempt to do so, too, in a case where, in my judgment, the action could not, under any circumstances, be maintained. The plaintiff in this action, having entered under a *bona fide* claim of title, and not one which was merely colorable, and after the former owner or occupant had voluntarily abandoned the possession, there can be no pretense, as against him, that his detention of the premises is or can be converted into one which is forcible or violent, within the meaning of the statute.

In making these observations upon the statute, which are to be considered as the expression of my own views only, I have not forgotten the two subsequent cases in this court which have been supposed by some to shake or overrule those earlier ones. I refer to *Savage v. Carney* (8 Wis. 162) and *Jarvis v. Hamilton* (16 id. 574). Justice PAINE, in the latter case, expresses the opinion that the former (*Savage v. Carney*) is in conflict with the earlier decisions, and that it seems to overrule them by holding that justices of the peace may try cases where the title to land comes in question. This, I think, was a clear mistake; and I must say it seems to me very surprising that a judge of the acknowledged ability and clear and accurate discriminative powers of my learned associate, should have so entirely misapprehended the effect of that decision. I do not think it conflicts in the slightest degree with those which preceded it; and it appears to me that the learned judge must have fallen into the too common error of seizing upon some general expressions found in the opinion, and applying them, not, as the court did, to the facts or state of the case before it, but to some different state of facts which the court cannot be presumed to have had in view at all. It is well known that this is not a just or proper method of interpreting judicial opinions, or of determining the effect of judicial decisions. That case (*Savage v. Carney*) was decided when the bench was composed of two of the same judges, Chief Justice WHITON and Justice SMITH (the latter writing the opinion), who participated, and must have concurred, in the earlier decisions. It contains no reference to the former decisions, nor the slightest intimation of any intention to overrule or modify them; and an examination of the case will show that it does not do so. What was the case? It was the ordinary one, under the 12th section, of a landlord against his tenant, to dispossess the tenant for alleged breaches of the covenants contained in the lease.

Savage, the assignee of the lessor, and holder of the reversion, sued Carney, the assignee of the lessee, and tenant in possession, claiming to oust him on that ground. The trial of the cause proceeded so far in the justice's court, that Savage introduced the lease, and then offered in evidence the assignment of it from Eldred, the lessor, to himself. To this, objection was made on the part of Carney, for the reason that a question of title was raised upon the plaintiff's own showing. The justice sustained the objection, and dismissed the suit; and from his judgment there was an appeal to the county court. The cause coming on to be heard in that court, the motion was renewed, and the court dismissed the action and rendered judgment in favor of the defendant for the same reason given by the justice of the peace. On appeal to this court, the judgment of the county court was reversed; and I do not see how this court could have done otherwise. On this statement of facts, we see what the question was of which the court was speaking when it made use of the word "title" in the opinion, and that it was with reference to the right of the plaintiff to prove before the justice of the peace his "title" as assignee of the lease and of the lessor's right of action upon it, by giving in evidence the assignment from the lessor to himself. That the question whether the lease had been assigned and the plaintiff, Savage, had succeeded to the rights of the lessor, was one which it was competent for the justice to try, seems to me too clear to admit of doubt. The jurisdiction to determine the question whether the instrument offered in evidence operated as an assignment of the lease or not, was the same as the jurisdiction to determine whether the instrument received in evidence was in fact and in law a lease, and so created the relation of landlord and tenant between the parties to it. Both were questions of the same nature — were necessarily involved in the action, and the justice had

power to determine them, unless his jurisdiction under the 12th section is limited to suits between lessor and lessee alone, and cannot be extended to actions in favor of or against the assignees of either. Such a construction would be plainly contrary to the spirit of the provision, even though a different intention were not expressly manifested. But such intention is manifested by the words "the lessor, his heirs, executors, administrators, assigns," etc. And the same remedy is expressly given by the 14th section of the statute prescribing the rights and duties of landlords and tenants (R. S. ch. 91), which reads as follows: "The grantees of any demised lands, tenements, *rents*, or other hereditaments, or of *the reversion thereof, the assignee of the lessor of any demise,* and the heirs and personal representatives of the lessor, grantee or assignee, *shall have the same remedies, by entry, action or otherwise,* for the non-performance of any agreement contained in the lease so assigned, or for the recovery of any rent, or for the doing of any waste, or other cause of forfeiture, as the grantor or lessor had, or might have had, if said reversion had remained in such lessor or grantor." The effect of this statute is to cause the covenants entered into on the part of the lessee, or the conditions under which he holds, to run with the land, and to pass by conveyance or assignment to the assignee of the lessor, or of the *reversion,* so that such assignee may at once, and without *attornment* by the lessee, take advantage of any covenant or condition contained in the lease, the same as the lessor himself might have done. The consent of the lessee, or what was called *attorning,* is no longer required, as at the common law, for this purpose, but the assignee succeeds immediately to all the rights and remedies which the lessor had, or might have had, if no assignment had been made. In other words, the assignee becomes himself the landlord, standing in the place of the lessor, and enjoying all his rights and privileges under and by virtue of the lease. And

by the next section (15), the like remedies against the grantees, assignees, etc., of the lessor, are given to the lessees of any lands, their assigns or personal representatives. These provisions are the re-enactment, in substance, of the English statutes of 32 Henry VIII, c. 34, and 11 George II, c. 19; and, it is presumed, have been adopted in most of the states, though, it would seem, not in all. See Taylor's Landlord and Tenant, § 439. In the absence of this statute, or of a provision like that found in the 12th section of the forcible entry and detainer act, giving the remedy to the heirs, representatives and assigns of the lessor, and as the case would have stood at the common law without *attornment* on the part of the tenant, no doubt a question of *title* would have been presented. Such is still the case in those states where the English statutes above referred to have not been adopted, and where the remedy of unlawful detainer has not been expressly extended by statute to the heirs, representatives and assigns of the lessor. See *Reay v. Cotter*, 29 Cal. 168, and cases there cited from New Jersey and Missouri; to which others might be added. But the decisions in those states are clearly inapplicable in this, for the reason that the common law rule no longer prevails here. The assignee here has all the rights and remedies of the lessor. He becomes the lessor by virtue of the assignment, and stands in the relation of landlord to the tenant in possession under the lease; and the latter can no more dispute his title than he could that of the original lessor; and if the proof of the assignment or transfer from the first lessor to his assignee or grantee can be said to be proof of title to land, it is such in but a limited sense only. No general question of title is involved, or can be presented; and it would seem that the offer of the deed or assignment in evidence, instead of being regarded as proof of title to land, ought rather to be deemed as evidence of a different nature given merely for the purpose of showing that the relation of landlord and

tenant exists between the parties to the action, and so, to show that no question as to the title to land can arise between them. And that such is the effect ascribed to statutes like these, extending the remedy of unlawful detainer to the assignees, heirs and representatives of the lessor, and to other cases where the party in possession has only a temporary or defeasible estate, and that no question of title to land arises in such actions, I cite the following decisions in states where such statutes have been enacted. In some states the remedy is given, as in this, to the lessor, his heirs or assigns; in others, to the vendor of land, where the vendee in possession has failed to comply with his contract; in others, to the mortgagee against the mortgagor; and in others still, to purchasers at execution and foreclosure sales. In no case, however, so far as my observation has extended, is it regarded as a question of title to land. *Sullivan v. Enders*, 3 Dana, 66; *Turly v. Foster*, 2 Marshall, 204; *Mason v. Bascom*, 3 B. Monroe, 271; *Haynes v. Adams*, 3 Marshall, 149; *Cummings v. Kilpatrick*, 23 Miss. (1 Cushman) 106; *Rabe v. Fyler*, 10 S. & M. 441; *Spear v. McKay*, Walker (Miss.), 265; *Beezley v. Burgett*, 15 Iowa, 192; *McKissock v. Bullington*, 29 Miss. 535; *Barto v. Abbe*, 16 Ohio, 408; *Herndon v. Bascom*, 8 Dana, 113; *Hildreth v. Conant*, 10 Met. (Mass.) 298; *Snoddy v. Watt*, 9 Ala. 507; *Gass v. Newman*, 1 Head (Tenn.), 136; *Philips v. Sampson*, 2 id. 429; *Reader v. Crandall*, 29 Mo. 72; *Reed v. Bell*, 26 id. 487; *Tucker v. Phelps*, 2 Met. (Ky.) 416; *Moore v. Goslin*, 5 Cal. 266; 6 id. 52; *Stimson v. Gosset*, 4 Ala. 170; *Hollis v. Pool*, 3 Met. (Mass.) 350. It seems very clear to me, therefore, inasmuch as the question whether the relation of landlord and tenant exists between the parties is one which must in all cases arise and be determined by the justice in order to his taking any jurisdiction under the section, that this court very correctly decided that the assignment of the lease was

improperly ruled out; and although I cannot agree that the words "title to land," used in the opinion with reference to the question, were precisely suitable or proper, the same not having been in a strict and proper sense of the term a question of such title, as I have endeavored to show, yet as, under the circumstances, they ought not to mislead any one, it was, perhaps, more a matter of taste than any thing else, whether they should be made use of or not. Their employment in this connection is undoubtedly attributable to the fact that the question was erroneously treated by the court below as a question of title, and may have been so discussed at the bar of this court.

Having thus endeavored to show that there is no conflict in the decisions of this court upon the subject, it may perhaps be proper for me briefly to add some considerations, derivable from the statute and otherwise, why the remedy afforded by it ought not to be extended to the trial of mere questions of title, like that involved in the unlawful detainer action complained of in this suit. In the first place, it is manifest from the entire provisions of the statute, that it was never intended to be so applied. In all cases, except those against tenants as provided by the 12th section, the parties proceeded against are spoken of as "offenders," or persons guilty of some breach of the peace or violation of the criminal law. A system of penalties and forfeitures is provided. A fine not exceeding one hundred dollars must be imposed, and treble damages, with costs of suit, may be recovered. It cannot be that these are intended as the fruits of a peaceful entry and holding of the possession of land under a *bona fide* claim of title, though the same may afterward prove to have been defective.

And, if the change of phraseology from the territorial statute, by the use of the word *or*, in the place of *and*, between the words "unlawful" and "forcible" in the

second and third sections, requires any explanation in addition to that given in *Ferrell v. Lamar*, it will be found in *O' Connell v. Gillespie*, 17 Ind. 459. A similar change occurred in that state between an earlier and later statute, and it was insisted before the court, according to the literal interpretation, that justices of the peace had jurisdiction to try cases where the entry and detention were merely unlawful. To this the court answered: "But this literal interpretation fails to meet the evident intention of the legislature, as gathered from the entire provision, as well as from contemporaneous and previous legislation. This construction could give justices of the peace jurisdiction in all actions for the recovery of real estate, where one unlawfully entered the land of another, and detained it from him. This is opposed by contemporaneous legislation, which does not give justices jurisdiction to try titles to real estate. In all previous legislation on the subject of forcible entry and detainer, the statutes required that, in order to give justices jurisdiction, there should be force, either in the entry or detainer. This construction is inconsistent with the latter branch of the provision in question. An entry may be unlawful, but at the same time peaceable. By the latter branch, where the entry is peaceable, the detention must be unlawful and forcible. We think it clear that the legislature intended to furnish this summary remedy only in cases where there is an unlawful *and* forcible entry, or where the entry is peaceable (without force), but the detention is unlawful and forcible. The word '*or*' in the first sentence of the provision is used evidently in the sense of '*and*.' The provision may be read as follows: 'Any person who shall make unlawful *and* forcible entry into lands, and shall either peaceably or forcibly detain the same,' etc., may be ousted. This renders the provision intelligible and consistent as a whole, and expresses what the legislature evidently intended." These remarks apply with equal force to

our own statute, and fully sustain the construction which it has already received. See also *Owen v. Doty* (27 Cal. 505), where the court put the same construction upon a statute of that state, which, it was conceded, "literally read, was broad enough to include every unlawful withholding of the possession from the person entitled to it, whether the defendant's entry was lawful or unlawful." And, upon this point, also, I call especial attention to the opinion of the court in *Cummings v. Kilpatrick*, 23 Miss. (1 Cush.) 106, and to *Ryegate v. Wardsboro*, 30 Vt. 749.

And it seems to me, too, that the provision in the general statute regulating the civil jurisdiction of justices of the peace, that they shall not have power to try actions where the title to land shall in any wise come in question, is entitled to great weight. It shows what the policy of the legislature is, and that it is not that the grave and difficult questions arising in controversies of that kind are to be heard and decided in a forum so manifestly unfitted for the purpose. If the jurisdiction is to be held, it can only be upon the unequivocal language of a statute showing that the policy of the state has been changed, and that the legislature intend to raise those heretofore inferior tribunals to the dignity and power of courts of general jurisdiction. Such a change of jurisdiction and policy is not to be inferred from so slight a circumstance as the unimportant and apparently accidental change of phraseology which has occurred in our statute.

And, again, if the construction is to prevail, that a trial of the legal title may be had before a justice of the peace, it follows that he may also try and determine all questions of equitable title arising in the action, and render judgment upon the same. All equitable defenses may be made in actions at law, and the 22d section of the act provides that all matters in excuse, justification or avoidance of the allegations of the complaint shall be pleaded specially, or notice thereof given. If, upon the

Winterfield vs. Stauss.

trial of title, the defendant sets up an equitable claim, it must be examined, and, if found to exist, must be allowed. It would seem impossible that a jurisdiction of this nature was ever intended to be conferred upon justices of the peace, who, though in most instances, no doubt, very respectable and intelligent gentlemen, are wholly unqualified, both by education and habit, to deal with or determine such questions. I cannot think that such was the intention.

But, if I am mistaken in my views of the law, which, on account of the importance of the subject, I have expressed very fully, and if justices of the peace have jurisdiction to try title to land, then, as I said at the outset of this opinion, the decision in this case must be the same. If the jurisdiction exists, the plaintiff has his remedy by pleading the matters set up in the complaint in defense of the action before the justice. If the jurisdiction does not exist, the attempt to prosecute that action will be futile, and his remedy will be complete on that ground.

For these reasons the order of the circuit court, refusing to vacate and dissolve the temporary injunction, must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.* — Ordered accordingly.