(81 N. W. Rep. 65.)

---

NORTHERN PACIFIC RAILWAY CO. *vs.* WM. A. McCLURE, *et al.*

Opinion filed November 14, 1899.

**Railroads—Fires—Liability—Exemption—Leases — Covenant—Assignment**

On October 1, 1892, the Northern Pacific Railroad Company leased a portion of its right of way to the defendants for warehouse purposes. The defendants covenanted in the lease that, in addition to paying a nominal rent, they would save and hold the lessor harmless from losses arising out of the destruction of property on the leased premises by fires set by the lessor's engines. Said lease contained a stipulation that all of its covenants and conditions should be binding upon the assigns of both parties to it. On August 18, 1896, the Northern Pacific Railroad Company transferred all of its property, including the premises demised and the lease, to the Northern Pacific Railway Company, the planitiff in this action. The lessees consented to such transfer, and attorned to the plaintiff as their landlord under said lease. *Held,* in an action by plaintiff to recover the amount of a loss suffered by it as a result of a fire set by its engine, that the covenants to save harmless passed to plaintiff, and it is accordingly entitled to recover thereon.

**Covenants Which Run with the Land—Not Named in Statutory Enumeration.**

Sections 3784-3787, Rev. Codes, which declare what covenants in grants of real property run with the land, and designate a number of such covenants by name, construed; and *held,* that said sections do not confine covenants which run with the land to those specifically named, but that such covenants as by reason of their character are within the meaning of said sections also run with the land.

Appeal from District Court, Cass County; *Pollock,* J.

Action by the Northern Pacific Railway Company against William A. McClure and others to recover indemnity, under a lease, for liability for property destroyed by fire. From a judgment in favor of plaintiff, on an order overruling a demurrer to the complaint, defendants appeal.

Affirmed.

*Newman, Spalding & Stambaugh,* for appellant.

There is no privity of contract between the defendants and the Northern Pacific Railway Company, and no privity of estate which will allow the company to recover any loss which it has sustained.

The covenant does not run with the land. § § 3784, 3785, 3786 and 3787, Rev. Codes; Tayor's L. & T. § 260; 1 Washb. Real Prop. Sec. 4, Subd. 10 and 11; *Newman* v. *Wells*, 17 Wend. 145; *Morse* v. *Garner*, 47 Am. Dec. 565; *Countryman* v. *Dick*, 13 Abb. New Cases, 114, n; *Carpenter* v. *Ins. Co.*, 15 Pet. 503; *Columbia Ins. Co.* v. *Lawrence*, 10 Pet. 572. The provision in the writing is a contract of insurance, § § 4441 and 4487, Rev. Codes, and a provision as a contract of insurance or indemnity does not run with the land, but is a strictly personal covenant. *Dunlap* v. *Avery*, 89 N. Y. 599; *Reid* v. *McCrum*, 91 N. Y. 412; *Hursha* v. *Reid*, 45 N. Y. 419; *Scott* v. *McMillan*, 76 N. Y. 141; *Cromwell* v. *Ins. Co.*, 44 N. Y. 47; *Hastings* v. *Ins. Co.*, 73 N. Y. 152; Sec. 4489, Rev. Codes.

*Ball, Watson & Maclay*, for respondent.

All the covenants and agreements which were wrapped up and involved in the use of the premises and the purposes for which they were leased and which were part of the consideration upon which the lease was based, became operative in favor of the railway company upon the attornment to it by the lessees. Abbott's Law Dict. Subj. "Attornment"; *Cornish* v. *Searell*, 8 B. & C. 471; *Doe* v. *Smith*, 8 Ad. & E. 255; *Austin* v. *Ahern*, 61 N. Y. 6 & 15. Upon the reorganization of a corporation the new corporation may succeed to the rights of its predecessor. In such case an assignment is a matter of form and not of substance. *New York Bank Note Co.* v. *Bank Note Co.*, 50 N. Y. Supp. 1093-1099. The covenant runs with the land and is operative in favor of every owner of the railroad while the lease remains in existence. *Vyvyan* v. *Arthur*, 1 B. & C. 410; *Dunbar* v. *Jumper*, 2 Yeates, 74; *Brandford* v. *Blair*, 4 Atl. Rep. 218; *Railway* v. *Fisher*, 24 N. E. Rep. 756; *Bronson* v. *Coffin*, 108 Mass. 175; *Railway* v. *Bosworth*, 14 N. E. Rep. 533; *State* v. *McPherson*, 40 Atl. Rep. 630; *Williams* v. *Earle*, L. R. 3 Q. B. 200; *Tatem* v *Chaplin*, 2 H. Bl. 133; *Torrey* v. *Wallace*, 3 Cush. 442; *Savage* v. *Mason*, 3 Cush. 500; *Aiken* v. *Railway*, 26 Barb. 289; Tiedeman on Real Property, § 190; *Van Renssalaer* v. *Smith*, 27 Barb. 146-174. Whether the covenant is such as would run with the land or not it vested in the plaintiff as the assignee of the railroad company by virtue of sections 3366 and 3367, Revised Codes. Under this statute these covenants will be construed as running with the land. *Winterfield* v. *Stauss*, 24 Wis. 394-403; *State* v. *McPherson*, 40 Atl. Rep. 630; *State* v. *Idler*, 24 Atl. Rep. 554; *Barnes* v. *Trust Co.* 48 N. E. Rep. 31.

YOUNG, J. In this case a demurrer to the complaint was interposed by defendants' counsel upon the ground that it does not state facts sufficient to constitute a cause of action. The demurrer was overruled by the trial court, and, defendants having elected to stand upon their demurrer, judgment was ordered and entered for the plaintiff for the relief demanded. The defendants appeal from the judgment, and submit for review the correctness of the court's

order overruling the demurrer, and that question only. If that ruling is sustained, the judgment must be affirmed. If not, it will be reversed. By interposing the demurrer, the defendants admit the truth of all facts alleged in the complaint which are well pleaded, but challenge their sufficiency in law to create a cause of action against them in favor of the plaintiff. The material facts so admitted by the demurrer are concisely stated in the brief of respondent's counsel, from which we will quote. They are these: "On October 1, 1892, the defendants leased from the Northern Pacific Railroad Company part of its right of way at Richardton, North Dakota, adjacent to its tracks, for a term of five years. Such leasing was for the benefit and advantage of both parties, through the facilities furnished to defendants for carrying on their business of storing and shipping merchandise; and to the railroad company, by reason of the increased traffic acquired thereby for its road. Said lease was given in consideration of a nominal rent, and in further consideration of the covenant, among others, on the part of the lessees, that they would and did assume all risks of loss or damage to any property upon the leased premises, and that they would save harmless the lessor from all damages or claims for losses or injury suffered to said property, by whomsoever claimed. Afterwards, and during the continuance of the lease, said Northern Pacific Railroad Company was reorganized under the name of the plaintiff, Northern Pacific Railway Company; and all the property of the railroad company, including the land and lease in question, was on the 18th day of August, 1896, conveyed and transferred to the Northern Pacific Railway Company. Thereupon said plaintiff railway company operated said line of railroad, and the control and management of said road thereafter was in the same hands, substantially, as before the reorganization; and the personnel of the operating and engineering departments, and the method of its operation and management, were thereafter substantially the same as they had been while the road was operated under the name of the Northern Pacific Railroad Company. The lessees consented to the transfer and conveyance from the railroad company to the railway company, and attorned to the plaintiff railway company as their landlord; and after such transfer they accepted and retained all the rights, benefits, and privileges conferred upon them by the lease, as lessees thereunder; and the lease was, by its express terms, binding upon the railway company, as the successor and assign of the railroad company. * * * The lessees permitted the McCormick Harvesting Machine Company to store their property upon the leased premises, and on April 26, 1897, during the continuance of the lease, such property was accidently destroyed by fire. The machine company sued the plaintiff to recover damages for the destruction of said property, and the plaintiff duly notified and requested the defendant lessees to defend the action, but they failed to do so. The plaintiff thereupon defended the action, and did all

in its power to protect its own rights and those of the defendants; but judgment was duly recovered against it, and paid by it to the machine company."

This action is brought, upon the indemnity covenant in the lease from the Northern Pacific Railroad Company to the defendants, to recover the amount disbursed by plaintiff in paying the judgment referred to; also, the costs incurred in defending the action wherein the judgment was rendered. In the lease in question the Northern Pacific Railroad Company is named as the first party, and the defendants as second parties. The portion of said lease upon which plaintiff relies is in the following language: "The said parties of the second part shall, and do hereby, assume all risks of loss, damage, or destruction of any property, building or contents, coal, lumber, or material, that may be upon, or in proximity to, the grounds included in this lease, by the parties of the second part or by any other party, occasioned by fire or sparks from locomotive engines, or other cause, or by neglect, carelessness, or misconduct of any person in the employment or service of the said party of the first part; it being the intent hereof that the said parties of the second part shall and do release, forever discharge, save and hold harmless, the said party of the first part from all damages and claims for losses or injury suffered or sustained, or that may be suffered or sustained, to said property, or to any other property on or near said demised premises." No question is raised as to the validity of the contract of lease as a whole, or as to the foregoing covenant. On the contrary, counsel for defendants expressly concede in their brief that the agreement of defendants to save and hold the lessor harmless is a binding agreement, and that the lessor might have successfully maintained an action against them for recovery thereon for a breach of the same. But it is contended that this covenant did not pass to the plaintiff, as the assign and grantee of the lessor, and that it cannot, therefore, recover thereon. Defendant's whole contention is based upon the last proposition. Did the covenant to save the lessor harmless against claims for damages for losses of property upon the demised premises pass to the new corporation, the Northern Pacific Railway Company, the plaintiff in this action? If this covenant of the lessees did pass to the plaintiff by the transfer of the lease to it by the lessor, or by the grant to it of the right of way which is the subject of the lease, then it is patent that plaintiff has stated a cause of action entitling it to the relief demanded; for it is sufficiently alleged that it has suffered such a loss as entitles it to a recovery under the covenant referred to. The loss by fire occurred about eight months after the transfer of the land and lease by the old corporation to the plaintiff.

At early common law a lease was considered like any other agreement or chose in action, and was not assignable so as to give the assignee an action against the tenant. Later the injustice which this rule caused was partially corrected by the enactment of 32

Hen. VIII, c. 34, § 1, declaring that the assignee of the reversion should become invested with the rents. It was thereafter held that the assignment of the reversion created a privity of estate between the assignee and the tenant; also, that a subsequent attornment of the tenant to the assignee created a privity of contract between the tenant and the assignee, which authorized the latter to sue for rent in his own name. *Fisher* v. *Deering,* 60 Ill. 114; *Barnes* v. *Trust Co.* (Ill. Sup.) 48 N. E. Rep. 31. In this state some of the uncertainty as to the rights and remedies of grantees and devisees of a lessor against tenants of the latter is removed by direct legislation. Section 3366, Rev. Codes, provides that "a person to whom any real property is transferred or decvised upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for non-performance of any of the terms of the lease, or for any waste or cause for forfeiture as his grantor or devisor might have had." It is also provided in section 3367, Id., that the lessor has the same remedies against the assignee of the lessee for the breach of an agreement in the lease as he has against the immediate lessee; also, that the lessee has the same remedies against the assignee of the lessor which he may have had against the lessor himself, except upon covenants against incumbrances, or relating to the title or possession of the premises. Section 3543 also provides that "grants of rents or reversion or of remainders are good and effectual without attornment of tenants, but no tenant who before notice of the grant shall have paid rent to the grantor must suffer any damage thereby." Most of the states now have similar statutes. The Supreme Court of Wisconsin, in construing their statute (which is substantially like sections 3366 and 3367, supra, and wholly so, in effect, when the two sections are construed together) in *Winterfield* v. *Stauss,* 24 Wis. 394, said: "The effect of this statute is to cause the covenants entered into on the part of the lessee, or the conditions upon which he holds, to run with the land, and to pass by conveyance or assignment to the assignee of the lessor, or of the reversion, so that such assignee may at once, and without attornment by the lessee, take advantage of any covenant or condition contained in the lease, the same as the lessor himself might have done. The consent of the lessee, or what was called 'attorning,' is no longer required, as at the common law, for this purpose; but the assignee succeeds immediately to all the rights and remedies which the lessor had, or might have had if no assignment had been made. In other words, the assignee becomes himself the landlord, standing in the place of the lessor, and enjoying all his rights and privileges under and by virtue of the lease. * * * The assignee here has all the rights and remedies of the lessor. He becomes the lessor by virtue of the assignment, and stands in the relation of landlord to the tenant in possession under the lease." We think the interpretation of the Wisconsin court, with the exception hereafter noted, is entirely

sound, and evidently conforms to the legislative intention in enacting the remedial statutes, which was to place the assignees of both lessors and lessees in the same position relative to the lease which their assignors had, and to give to them the same rights and the same remedies.

Counsel for defendants contend, however, that plaintiff cannot recover upon the covenant in question, because there is no privity of estate or contract between it and the defendants. That privity both of contract and estate existed by virtue of the transfer of the lease and grant of the premises to the plaintiff by the lessor is shown by the case of *Fisher* v. *Deering*, 60 Ill. 114; also, *Winterfield* v. *Stauss*, supra; also by the weight of authority. *Hunt* v. *Thompson*, 2 Allen, 341; *Pfaff* v. *Golden*, 126 Mass. 402; *Kendall* v. *Carland*, 5 Cush. 74; *Scott* v. *Lunt's Adm'r*, 7 Pet. 596, 8 L. Ed. 797; *Abercrombie* v. *Redpath*, 1 Iowa, 111; *Crosby* v. *Loop*, 13 Ill. 625; *Dixson* v. *Niccolls*, 39 Ill. 372; *Same* v. *Buell*, 21 Ill. 202; *Hatfield* v. *Lockwood*, 18 Iowa, 296; *Page* v. *Esty*, 54 Me. 319;; *Moffat* v. *Smith*, 4 N. Y. 126; *Glover* v. *Wilson*, 2 Barb. 264; *Port* v. *Jackson*, 17 Johns. 239; *Morris* v. *Niles*, 12 Abb. Prac. 103; *Bonetti* v. *Treat* (Cal.) 27 Pac. Rep. 612, 14 L. R. A. 151; *Watson* v. *Idler* (N. J. Sup.) 24 Atl. Rep. 554.

Counsel has called our attention to sections 3784-3787, Rev. Codes, in support of their contention that the covenant to indemnify did not pass to plaintiff. They are as follows:

"Section 3784. Certain covenants contained in grants of estates of real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them. Such covenants are said to run with the land.

"Sec. 3785. The only covenants which run with the land are those specified in this article and those which are incident thereto.

"Sec. 3786. Every covenant contained in a grant of an estate in real property which is made for the direct benefit of the property or some part of it then in existence runs with the land.

"Sec. 3787. The last section includes covenants of warranty, for quiet enjoyment or for further assurance on the part of the grantor, and covenants for the payment of rent, or of taxes or assessments upon the land on the part of the grantee."

We do not think these sections aid counsel's contention, for an examination of them makes it obvious that the legislature did not undertake to enumerate by name all of the particular covenants which run with the land, and pass to assigns and grantees. These sections, taken together, have a twofold purpose: They declare the effect of covenants which run with the land to be as binding upon the assigns of the covenantor and covenantee as if they had been personally made by them. In addition, they declare the test as to what constitutes a covenant which runs with the land, by the

aid of which courts must determine in each particular case whether a covenant in question comes within the statute. At common law the principle which determined whether a covenant run with the land required that it be, in a sense, inherent in the estate demised. or connected with it, or that it touched the land or its value, or the value of the reversion or of the term, or went to fix the amount of the rent. See *Norman* v. *Wells*, 17 Wend. 136; *Allen* v. *Culver*, 3 Denio, 284; *Dolph* v. *White*, 12 N. Y. 296. Certainly our statute does not restrict us to narrower limits, for its express language extends to covenants "appurtenant to such estates," covenants "for the direct benefit of the property or some part of it then in existence," and those which "are incidental thereto." The conclusion cannot be drawn that because section 3787 enumerates five of the most common covenants, namely, of warranty, for quiet enjoyment, for further assurance, for payment of rent, and for payment of taxes and assessments, as running with the land, that all others are excluded. The language of the section itself forbids such a construction, for it shows that these particular covenants are merely included among those not mentioned. Further, it is not conceivable that the legislature intended to limit such covenants to those mentioned, and exclude the great number which have for generations been held as covenants running with the land, and as binding assigns. Among those, we name but a few: Covenants to repair. *Shelby* v. *Hearne*, 6 Yerg. 512; *Allen* v. *Culver*, 3 Denio, 284. To pay for improvements. *Ecke* v. *Fetzer*, 65 Wis. 55, 26 N. W. Rep. 266. Not to erect and operate a rival mill. *Norman* v. *Wells* 17 Wend. 136. To leave in repair. *Demarest* v. *Willard*, 8 Cow. 206; *Myers* v. *Burns*, 33 Barb. 401. To maintaining existing fences. *Hartung* v. *Witte*, 59 Wis. 285, 18 N. W. Rep. 175; *Kellogg* v. *Robinson*, 6 Vt. 276. For right of ingress and egress to and from a building. *Bush* v. *Calis*, 1 Show. 389. Not to assign or underlet. *Williams* v. *Earle*, 9 Best & S. 740. Not to erect a building in front of the demised premises. *Trustees* v. *Cowen*, 4 Paige, 510. Not to plow or cultivate in a certain manner. *Cockson* v. *Cock*, Cro. Jac. 125. To use land in a husbandlike manner, and leave it in like condition. *Walsh* v. *Watson*, Esp. N. P. 295. To manure land each year. —— v. *Davis*, M. S. M. T., 42 Geo. III. To leave land with certain crops planted. *Hooper* v. *Clark*, 8 Best & S. 150. To reside on the premises during the term. *Taltem* v. *Chaplin*, 2 H. Bl. 133. Not to carry on particular trades on the premises. *Barron* v. *Richard*, 3 Edw. Ch. 96. To erect only buildings of a certain kind, and use them only for a specified purpose. *St. Andrew's Lutheran Church's Appeal*, 67 Pa. St. 512. To erect buildings on the premises. *Fisher* v. *Lewis*, 3 Pa. Law J. 73. To erect and maintain an adjoining fence. *Bronson* v. *Coffin*, 108 Mass. 175. To insure buildings when the money is to be used to rebuild. *Thomas' Adm'rs* v. *Von Kapff's Ex'rs*, 6 Gill & J. 372. The cases, it will be seen, are as various as the particular covenants upon which they are based. Likewise in the future

each particular case must be determined by itself, by the application of the principle declared by common law or by statutes, where they exist.

Our conclusion is that the covenant in question in the case at bar passed to the plaintiff, and invested him with the same rights thereunder which the old corporation had. In reaching this conclusion, we are not controlled by the fact simply that it is a covenant contained in a lease, for, in our opinion, that is not enough; and in this respect we think the language of the Wisconsin court in *Winterfield* v. *Stauss*, supra, is too broad, if it was intended to mean that all covenants of the lessee with the lessor passed to the assigns of the latter, regardless of the nature of the covenants. For it must be conceded that covenants and stipulations may be, and often are, inserted, which are wholly foreign to the subject-matter of the lease, and, while they are binding between the immediate parties thereto, are so disconnected with the estate that they do not pass by assignment, but remain as covenants between the original parties. But the covenant here involved is not of that nature. We think it is a covenant directly connected with the estate, and within the meaning of our statutes. While it is probably true that it is not an agreement to pay "rent," as that word is commonly understood, yet it has to do with determining the compensation which the lessor is to receive for the use of the premises. It is perfectly apparent that the agreement to pay $10 per year as rent was merely a nominal sum, and that the real consideration for the use of the lands was this particular agreement that the lessor should not suffer loss from damage suits brought to recover for the destruction of property upon the premises so leased to the defendants. If counsel's contention were true, that this covenant did not pass, then the only obligation the defendants would owe the plaintiff for the use of the property is the payment of the nominal rent of $10 per year, and that would be the extent of their liability; for it is clear that they can incur no liability to the old corporation, in fact or in law. For, by reason of the sale of all of its property to the plaintiff, it cannot be the moving agent in negligently setting fire to property on the premises from which alone the liability would arise. Further, none of the covenants of the lease have been binding upon the lessor since August 18, 1896; for on that day all of its rights were transferred to the plaintiff, and the defendants attorned to it as their landlord under the lease in question. The legal effect of these acts was a surrender of all of the rights which the lessor had in the lease to the plaintiff which were connected with the estate, and an assumption of all of the obligations therein by the lessee as thereafter binding upon him in favor of his new landlord. Moreover, this was in accordance with the intention of the original parties, and their express agreement in the lease, contained in the following language: "It is further mutually covenanted and agreed by and between the said parties hereto that the covenants, agreements, and conditions herein contained shall be binding upon the executors, administrators, and

assigns of the said parties of the second part, and the successors and assigns of the said party of the first part." The covenants and conditions which are thus expressly agreed to be binding upon the assigns of the lessor must be considered as binding upon the lessee, also, in order to effect mutuality; and such, without doubt, was the intention of the parties in making the stipulation. It would also seem that the covenant in question was one which directly affected the value of the property. It certainly would during the five years in which the lease run. For, without this covenant to save the lessor harmless, the lease of the property would, as this case shows, have been productive of loss, instead of profit, to the lessor or its assigns. So, too, the agreement to indemnify the lessor was one of the conditions, and the most important one, under which the defendants held the property, and was extremely valuable to the assignee of the lessor, and one which, as we have seen, was valueless to the lessor after its assignment of the lease, both in fact and by reason of its surrender. Covenants to indemnify and hold harmless, like that we have been considering, are not entirely new to the courts. They have been held to be legitimate provisions, and have been upheld as not against public policy. *Hartford Fire Ins. Co.* v. *Chicago, M. & St. P. Ry. Co.,* 17 C. C. A. 62, 70 Fed. Rep. 201, 30 L. R. A. 193. But we have not been able to find an adjudication upon the question whether this particular kind of a covenant runs with the land, and passes to the assigns of the lessor. Our conclusion, however, is, for the reasons stated, that this covenant passed to the plaintiff, and invested it with the same rights of protection against losses by it, and to the same extent and in the same manner as the lessor might have asserted had there been no assignment of the lease. The demurrer was properly overruled. Judgment affirmed. All concur.