[File No. 6374.]

AUGUST ANDERSON and Adolph Anderson, Appellants, v. MAR-
SHALL-MALAISE LUMBER COMPANY, a Corporation, and
Barney Goetz, Respondents.

(263 N. W. 721.)

Opinion filed December 7, 1935.

*John Moses,* for appellants.
*W. H. Esterly,* for respondents.

NUESSLE, J.   This action was brought to enjoin the defendants from
erecting and maintaining a certain frame building on defendant Lum-

ber Company's lot in the village of Beulah, contrary to the restrictive provisions in said defendant's deed. The trial court found for the defendants. Judgment was entered accordingly and the plaintiffs thereupon perfected this appeal.

The facts are substantially as follows: On February 13, 1926, the First State Bank of Beulah, a domestic banking corporation, owned lots 8 and 9, in block 10, in the village of Beulah. Lot 8 was a corner lot with a frontage of 25 feet on the south, and extended north 130 feet to an alley. Lot 9 adjoined it on the east. The bank conducted its business in a frame building located on the southwest portion of lot 8. The remainder of the property was unoccupied. The defendant lumber company was engaged in the lumber and hardware business. Its business was carried on on the lots north of and across the alley from lots 8 and 9. The lumber company contemplated the erection of a building to be used for its hardware business. It desired to have a south and west frontage contiguous to the lots it already owned. So it bought from the bank, lot 9, and a portion of lot 8, consisting of the north 40 feet of lot 8 and a strip 1½ feet wide along lot 9 on the east side of the south 90 feet of lot 8. Thus the bank remained the owner of the southwest portion of lot 8, with a frontage of 23½ feet on the south and a depth of 90 feet. The bank gave its warranty deed to the defendant lumber company for the property thus conveyed. This deed granted, bargained, sold and conveyed to the lumber company, its successors, heirs and assigns, the real estate in question "To have and to hold the same, together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said parties of the second part, its successors, heirs and assigns, forever. And the said First State Bank of Beulah, party of the first part, for itself, its successors or assigns, does covenant with the said parties of the second part, its successors, heirs and assigns, that it is well seized in fee of the lands and premises aforesaid, and has good right to sell and convey the same in manner and form aforesaid; that the same are free from all incumbrances, provided, however, that no structure of any kind shall be erected on said premises unless the same be fireproof, walls to be of such material as brick, tile, concrete or cement, and provided further, that the west and south wall of any such

structure shall be a party wall, and the party of the first part shall have the right to use the same as such, should it so desire." The deed was placed of record by the defendant lumber company which entered into possession of the property.

Thereafter the bank became insolvent. In 1927 the plaintiffs purchased that part of lot 8 owned by the bank from the receiver and took a warranty deed therefor. While this deed made no reference to the restrictions in the deed to the lumber company, the plaintiffs were apprised thereof and of the restrictive provisions contained therein. The plaintiffs entered into possession and occupancy of the premises so bought.

In 1934, the defendant lumber company began the erection of a frame building on lot 9. Plaintiffs protested but the lumber company persisted. Thereupon the plaintiffs brought the instant action to enjoin the erection of such building. No temporary order was prayed for as the parties agreed that suit might be brought and the matter litigated just as though such an order had issued. The defendant Goetz is interested in the suit as a lessee from the lumber company.

The plaintiffs contend that the restriction contained in the deed was for the benefit of that portion of the property retained by the grantor bank; that therefore it runs with the land and, as grantees of the bank, they are entitled to enforce compliance with its terms as against the defendant lumber company or anyone claiming under it. On the other hand, the defendants insist that the restriction in question was personal to the bank; that it does not run with the land, and that accordingly the plaintiffs, as grantees of the bank, cannot enforce it.

The statute, North Dakota Compiled Laws of 1913, dealing with the transfer of obligations, provides:

"Section 5785. Certain covenants contained in grants of estates in real property are appurtenant to such estates and pass with them so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee in the same manner as if they had personally entered into them. Such covenants are said to run with the land.

"Section 5786. The only covenants which run with the land are those specified in this article and those which are incidental thereto.

"Section 5787. Every covenant contained in a grant of an estate in

real property which is made for the direct benefit of the property or some part of it then in existence runs with the land.

"Section 5788. The last section includes covenants of warranty for quiet enjoyment or for further assurance on the part of a grantor and covenants for the payment of rent, or of taxes or assessments upon the land on the part of a grantee.

"Section 5789. A covenant for the addition of some new thing to real property, or for the direct benefit of some part of the property not then in existence or annexed thereto, when contained in a grant of an estate in such property and made by the covenantor expressly for his assigns or to the assigns of the covenantee runs with the land so far only as the assigns thus mentioned are concerned.

"Section 5790. A covenant running with the land binds those only who acquire the whole estate of the covenantor in some part of the property."

These statutory provisions were considered in the case of Northern P. R. Co. v. McClure, 9 N. D. 73, 81 N. W. 52, 47 L.R.A. 149. And a multitude of cases may be found in the books dealing with restrictive provisions in conveyances of real property. See Clapp v. Wilder, 176 Mass. 332, 57 N. E. 692, 50 L.R.A. 120; Berryman v. Hotel Savoy Co. 160 Cal. 559, 117 P. 677, 37 L.R.A.(N.S.) 5, and note at page 12; Stevenson v. Spivey, 132 Va. 115, 110 S. E. 367, 21 A.L.R. 1276, and note; Allen v. Massachusetts Bonding & Ins. Co. 248 Mass. 378, 143 N. E. 499, 33 A.L.R. 669, and note; Jennings v. Baroff, 104 N. J. Eq. 132, 144 A. 717, 60 A.L.R. 1219, and note; 4 Thomp. Real Prop. §§ 3360 et seq., and cases cited; 2 Washburn, Real Prop. 6th ed., §§ 1203 et seq. and cases cited.

Considering these authorities it is clear that one owning the fee has the right to sell his land subject to such reservations or restrictions as to its future use and enjoyment as he may see fit to impose, provided they are not contrary to public policy. And if, selling, he impose a valid restriction or reservation, he is entitled to enforce the same against his grantee. If it be imposed for his personal benefit or convenience, he only can enforce it. If it be imposed for the benefit of adjoining land of which he remains the owner, then the right to enforce the same passes to his grantees. Whether the right is personal to the

grantor or appurtenant to his remaining estate is a matter of fact—of intention—to be determined from the wording of the restrictive provision itself in the light of the circumstances attendant on the transaction. Restrictions and reservations as to the use of land conveyed are not favored, but when clearly established they will be given force and effect.

Viewed in the light of the foregoing rules, the question in the instant case is whether the restriction in the deed, under which the lumber company took, was personal to the grantor or was for the benefit of and thus appurtenant to that portion of lot 8 retained by the grantor bank. The defendants here contend that from the wording of the provision in question it is clear that the restriction thus imposed was wholly for the benefit and convenience of the grantor; that the clause providing that the grantor should have the right to use the south and west wall of any structure to be built as a party wall, clearly indicates this. But we cannot so read the provision in question. It seems to us that while it was somewhat informally drawn, it clearly indicates that the intention was to benefit that portion of the property remaining in the hands of the grantor. When the defendant lumber company took the deed it thereby agreed for itself, its successors and assigns, that no building should be erected that was not of fireproof construction. It is to be noted that the restriction is first negative—NO structure of any kind shall be erected unless the same be fireproof. Thus no obligation is imposed on the grantee to erect any building. The second portion of the restriction is affirmative to the effect that IF any structure be erected it shall have walls of a certain character, and the party of the first part shall have the right to use the south and west wall as a party wall. We are not here concerned with the second portion of the provision except as it may throw light on the character of the whole. It cannot be denied that it would be a great benefit to that portion of the property which the grantor bank retained to be insured that no building would be erected on the adjoining premises which were conveyed that was not of fireproof character. The grantor was a domestic corporation. Its life was limited to a definite period. Yet the reservation is not confined to that period. There is no limit to the time covered by the provision—"No building shall be erected unless" of the specified con-

struction. And the latter portion of the restrictive provision stipulating that if a building be erected its walls shall be party walls which the grantor may use as such, in no way detracts from the force and effect of the first part of the provision. The defendants cite and particularly rely upon the cases of Clapp v. Wilder, 176 Mass. 332, 57 N. E. 692, 50 L.R.A. 120, and Berryman v. Hotel Savoy Co. 160 Cal. 559, 117 P. 677, 37 L.R.A.(N.S.) 5 and note, supra. We have examined these cases. The restrictive provisions there involved were held to be personal and not enforceable at the hands of subsequent grantees of the property retained by the common grantor. In Clapp v. Wilder, the grantor was an invalid. He occupied his property as a place of abode. He desired to have a view of the sea from his residence, and so when he conveyed a portion of his property, that involved in the case, he inserted a condition "that said W. and H., (grantees) their heirs and assigns, shall never erect any building nearer the street than the store building." The court, in the prevailing opinion, held that the restrictive provision was, in effect, a condition; that considering the words of the provision and all the circumstances, the resulting right was personal to the grantor and his heirs or devisees; that "the deed . . . to the defendants conveyed a conditional fee, and that the right of reverter, remaining in the grantor up to the time of his death, went to his heirs or devisees," and that therefore there was no intention that the restrictive covenant should run with the land. In the Berryman Case, quoting from the syllabus: "The owners of land conveyed a parcel of it adjacent to other land owned by them by a deed which 'covenanted with a covenant running with the land herein conveyed' that a building should be erected upon the premises to be maintained as a first-class hotel, the main part of which should be located not less than seven feet from the front line and twelve feet from the southwest line, the spaces between the buildings and side lines to be used for flower gardens, with a provision for a reconveyance on destruction of the hotel and failure to rebuild within a year. The hotel was constructed in accordance with the covenant, and the grantors afterwards conveyed the land adjacent to the 12 foot space by deed containing a restriction against placing any building nearer than seven feet to the front line, and by mesne conveyances title to this property, on which stood a dwelling house with

lights on the northeast side, vested in the plaintiff." And the court held: "In an action to enjoin the defendant from violating the covenant in the common grantor's deed of the first parcel, that the covenant was a personal one, not running with the land, and not capable of enforcement by the plaintiff." As we read these authorities they are without force to sustain the contention of the defendants in the instant case. In any event, as we have said above, the question here is wholly one of fact and we are of the opinion that it must be resolved against the defendants. It is not out of place to say that the record discloses that when the plaintiffs first learned the defendant Lumber Company was about to erect the frame building, on account of which this action was begun, they protested to the company. The company insisted that the erection of such a building did not violate the provisions contained in their deed for the reason that the building was of a temporary character and was so built as to be easily removable. There was then no assertion of their later contention that as against the plaintiffs they were not bound by the restriction on which the plaintiffs rely. Accordingly, the plaintiffs are entitled to the injunctional relief for which they prayed.

The judgment appealed from must be reversed and judgment entered for the plaintiffs in accordance with this opinion.

It is so ordered.

BURKE, Ch. J., and MORRIS, CHRISTIANSON and BURR, JJ., concur.