Earl ALLEN and Nash Finch Company,
Plaintiffs and Appellants,

v.

MINOT AMUSEMENT CORP. and Minot
Christian Center, Defendants
and Appellees.

Civ. No. 9990.

Supreme Court of North Dakota.

Nov. 12, 1981.

Pringle & Herigstad, Minot, for plaintiffs and appellants; argued by Richard P. Olson, Minot.

McGee, Hankla, Backes & Wheeler, Minot, for defendant and appellee Minot Amusement Corp.

Eaton, Van de Streek & Ward, Minot, for defendant and appellee Minot Christian Center; argued by Nevin Van de Streek, Minot.

SAND, Justice.

This is an appeal by the plaintiffs, Earl Allen [Allen], and Nash Finch Company [Nash Finch], from a district court judgment which denied an injunction to restrain the defendants, Minot Christian Center [Minot Christian] and Minot Amusement Corporation [Minot Amusement], from using certain property in the Oak Park Shopping Center in Minot as a church, and which held that the defendants and their patrons had an easement to use the shopping center parking lot for parking.

Allen constructed the Oak Park Shopping Center on subdivided land which he owned in the city of Minot, and on 20 July 1961 he executed a lease agreement with Nash Finch as the major tenant in the shopping center. A "short form lease" was contemporaneously entered into and was recorded in the Register of Deeds office for Ward County, but the principal lease was not recorded. One of the conditions of the principal agreement was that the shopping center would not be used or occupied except for businesses of the "same kind and nature" as those listed and made part of an exhibit and attached to the principal lease between Nash Finch and Allen.[1] However,

1. The following were approved uses and occupancies:

| | | |
|---|---|---|
| Men's Apparel | Interior Decorating | Utility Company |
| Children's Apparel | Studio, Wallpaper | Retail Stores |
| Department Stores | & Paint | Stationery & |
| Drug | Radio Booth | Office Supplies |
| Hardware | Camera Shop | Pet Shop |
| Post Office | Women's Apparel | Toy Shop |

the exhibit was not attached to the recorded "short form lease," but was incorporated by reference.

On 1 Apr. 1963 Allen wrote to Nash Finch for permission to use part of the shopping center as a motion picture theater. Such a use was not included in the original approved uses. Nash Finch was originally opposed to allowing a motion picture theater in the shopping center. The opposition to the theater was reflected in several letters exchanged between Nash Finch and Allen. However, Nash Finch eventually granted permission to Allen to use the building as a motion picture theater in a letter from the president of Nash Finch to Allen which provided in part as follows:

"This consent is given, of course, with the understanding that it does not in any way operate as a waiver of any of the rights of Nash-Finch Company under its lease with you.

"This consent is further conditioned on your continuing responsibility to furnish Nash-Finch Company the following:

.    .    .    .    .

"3. That the use and occupancy conform to the provisions of your said lease with Nash-Finch Company."

The theater was built in 1964 and leased by Allen to Dakota Amusement Company who operated the theater until December 1969.

On 17 Dec. 1969 Allen entered into a contract for deed to sell the Oak Park theater to Minot Amusement.[2] The contract for deed between Allen and Minot Amusement specifically referred to the use and occupancy restrictions contained in the principal lease between Allen and Nash Finch.[3] However, Minot Amusement was not furnished with a list of the restrictions. The contract for deed provided an easement from Allen to Minot Amusement for parking of cars for patrons of the motion picture theater.[4] The contract for deed also required Minot Amusement to reimburse Allen for their prorated share of the costs of maintaining the parking lot.

The contract for deed was paid in full and a warranty deed was issued by Allen to

| | | |
|---|---|---|
| Off-Sale Liquor | Shoes | Shoe Repair |
| Reducing Salon | Jewelry Shop | Florist |
| Bank | Jewelry & Appliance | Professional |
| Real Estate Company | Repair | Business Offices |
| Furniture Stores | Variety | Newsstand |
| Small Loan Company | Restaurant | |
| Handicraft Shop | Furrier | |
| Record Shop | Candy Shop | |
| Dry Cleaners | Insurance Agency | |
| Barber Shop | Stock Broker | |

2. Allen's wife, Ethel Mae Allen, owned an interest in the shopping center at all times material to this lawsuit. However, by tacit agreement among the parties she was not included as a party to the litigation.

3. The contract for deed between Allen and Minot Amusement contained the following provision:

"10. *Covenants.* Buyer [Minot Amusement] acknowledges and agrees as follows:

"(a) That it has been furnished with a copy of pages 11 and 12 of that certain Lease dated the 20th day of January, 1961, between Earl Allen, Jr., and Ethal Mae Allen, his wife, as Lessors, and Nash-Finch Company, a Delaware corporation, as Lessee, covering a portion of Block 22, West Minot Addition to the City of Minot, North Dakota, which pages

include Paragraph No. 20 thereof; and that Buyer, until January 20, 1986, or the termination of said Lease, whichever shall first occur, will not effect or permit any use of the property herein sold which would constitute a violation of said Paragraph No. 20."

4. The easement provides as follows:

"Sellers [Allen] hereby grant to Buyer [Minot Amusement], its successors and assigns, an easement in perpetuity over and across that certain tract or parcel of land ... for the purpose of ingress and egress to and from the property, Exhibit A, and for the further purpose of the parking of cars by patrons of the motion picture theatre situate upon the property, Exhibit A, which parking rights are nonexclusive to Buyer."

Minot Amusement on 8 Jan. 1980 which contained the following provision:

"By acceptance of this deed, the grantee [Minot Amusement] herein does covenant that it will not effect or permit any use of the property herein conveyed contrary to the provisions of paragraph 10(a) [see footnote 3] of above referred to contract for deed. This covenant and restriction as to the use that may be made of grantee's premises shall in all things terminate and expire on January 20, 1986."

The warranty deed also contained language similar to the contract for deed concerning the easement for parking and the prorata sharing of expenses for maintaining the parking lot.

In 1980 Minot Amusement vacated Oak Park theater and moved to a new shopping center in Minot where it currently operates five theaters. Minot Amusement sought permission from Nash Finch to sell the theater to Minot Christian for their use as a church. However, Nash Finch refused to give their permission.[5] Nevertheless, Minot Amusement and Minot Christian entered into a contract for deed in July 1980 for the sale of the theater. Minot Christian began using the theater as a church and its patrons began using the parking lot to park their cars.

Allen and Nash Finch commenced this action to enforce the use and occupancy restrictions against Minot Amusement and Minot Christian. The plaintiffs also alleged that Minot Amusement failed to pay its prorata share of the parking lot maintenance costs and real estate tax which it was allegedly obligated to do through its contract for deed with Allen. Allen and Nash Finch further requested that the easement for parking by motion picture patrons be terminated for non-use because the building

was no longer used as a motion picture theater and because of the failure to pay the prorata cost contribution for maintenance of the parking lot.

The district court issued a memorandum decision in lieu of findings of fact and conclusions of law determined that the restrictive covenant did not run with the theater site because the restrictions were of no conceivable benefit to the theater. See NDCC § 47–04–26; *Marra v. Aetna Const. Co.*, 15 Cal.2d 375, 101 P.2d 490 (1940) [interpreting California statute similar to NDCC § 47–04–26]. The district court also determined the use and occupancy restriction was a nullity and had no force and effect because of an abandonment or waiver by Nash Finch, and further held that Minot Christian and its patrons had an easement for parking. The district court also determined that the provision containing the prorata payments for parking lot repairs was valid and enforceable by Allen. Judgment was entered and Allen and Nash Finch appealed.

The first issue raised by Allen and Nash Finch concerns whether or not the acquiescence by Nash Finch to the use of the building as a motion picture theater constituted a modification of the restrictive covenant or a waiver of its objection to the building's use as a church.

Prior to discussing the issue, it is necessary to note that Allen and Nash Finch were seeking injunctive relief. The granting or denying of injunctive relief is equitable in nature and rests in the sound discretion of the trial court. *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975). The trial court's ruling will not be reversed on appeal unless there has been an abuse of discretion. *Associated General Contractors of*

---

**5.** A letter from counsel for Minot Amusement (Joseph Abrahamson) contains the following:

"Under the terms of your Company's Lease for the store site, the lessor may not permit any part of the shopping center to be used for any purpose not therein specifically enumerated during the term of your Lease, a copy of which purposes is herewith enclosed.

.    .    .    .    .

"Last week a newly organized church group, the Minot Christian Center, a congre-

gation of The Church of God, an established sect, submitted an offer to buy the property from, and which is acceptable to my client. Because the group is new and requires a 'home', we must give it an answer by next week. The only real impediment is your Company's consent to the use of the property for church purposes."

However, Nash Finch refused to consent to the sale of the theater site for use as a church.

*North Dakota v. Local No. 580 of Laborers International Union of North America,* 278 N.W.2d 393 (N.D.1979).

■ A landowner may sell his land subject to such reservations or restrictions as he may see fit to impose, provided they are not contrary to public policy. *Anderson v. Marshall-Malaise Lumber Co.,* 66 N.D. 216, 263 N.W. 721 (1935). Although such reservations and restrictions are not favored, they will be given force and effect when clearly established. *Anderson v. Marshall-Malaise Lumber Co., supra.* The right to enforce a restriction or reservation may be lost by waiver or acquiescence. *Meierhenry v. Smith,* 208 Neb. 88, 302 N.W.2d 365 (1981); *Pool v. Denbeck,* 196 Neb. 27, 241 N.W.2d 503 (1976); see generally, 20 Am. Jur.2d *Covenants, Conditions, Etc.,* § 273, page 832. Whether or not there has been such acquiescence or waiver depends upon the facts and circumstances of each particular case. *Meierhenry v. Smith, supra; Pool v. Denbeck, supra.*

■ In this instance we believe that the overriding matter to be considered is that the consent to modify the restriction on uses and occupancies allowed by Nash Finch was specifically given "with the understanding that it does not in any way operate as a waiver of any of the rights of Nash Finch" and was further conditioned on the continuing responsibility that the "use and occupancy [of the land] conformed to the provisions of your [Allen's] said lease with Nash Finch." This language manifests a limited modification of the restrictive covenant by Nash Finch, and is not an instance of "many" or "numerous" exceptions of a restrictive covenant, but rather is a limited exception to the restrictive covenant. This language cannot and should not be interpreted beyond the actual consent given.

Minot Christian and Minot Amusement point out that the Nash Finch letter to Allen consenting to a theater in the shopping center was not recorded, and therefore they should not be deemed to have knowledge of the limited consent given by Nash Finch. They assert that based on the use of the land in violation of the recorded restrictions of use and occupancies, the waiver or modification by Nash Finch should be extended to cover the use of the land and building for any use similar to a theater.

■ The district court found that Minot Christian and Minot Amusement had constructive knowledge of the restrictions on uses and occupancies in the original lease between Allen and Nash Finch.[6] NDCC § 1–01–25. We may resort to the memorandum decision as an aid for determining the findings of fact made by the trial court. See, *Hegge v. Hegge,* 236 N.W.2d 910 (N.D. 1975). Based on the record, the finding of constructive knowledge is supported by the evidence and is not "clearly erroneous." NDRCivP Rule 52(a).

■ Because Minot Christian and Minot Amusement had constructive knowledge of the use restrictions, we believe they also had an obligation to inquire as to the extent and circumstances of the apparent violation of the restrictions. We believe the concept of law announced in *Putnam v. Dickinson,* 142 N.W.2d 111 (N.D.1966) is persuasive on this point.

In *Putnam* a "suburban-type" development for family homes was advertised in several newspapers in 1954. The advertisements contained a map of the development which depicted two areas marked "Park." The advertisements also contained the following statement: "Part of the area is reserved for an elementary school and three permanent park areas are provided to the purchasers of lots." However, the map was not filed for record. In 1956 a plat was filed for record. No park areas such as those included in the 1954 advertisement were shown on the plat. Several of the lots were subsequently sold through further advertisements which contained no mention of park areas. The defendants purchased part of the park area and allegedly "threatened to subdivide . . . [it] . . . into twelve lots for

---

**6.** Minot Christian, in its brief, does not dispute that it had constructive knowledge of the nature of the restrictive covenants in the 1961 lease between Allen and Nash Finch.

building purposes." The plaintiffs (owners of the subdivision) brought suit and alleged they had an easement for use of the park. In discussing whether or not the defendants had notice of the alleged easement, we said:

"A subsequent purchaser of a servient tenement is bound to take notice of rights that may be evident upon an inspection of the premises as well as those of which he may learn by an inspection of the records, and where a reasonably careful inspection of the premises followed by inquiry would disclose the existence of an easement, the grantee of the servient tenement takes title subject to the easement to the extent that his grantor is bound thereby." *Putnam, supra,* at 122.

In *Putnam,* an inspection of the premises followed by an inquiry of the lot owners would have disclosed that the lot owners claimed the park was for their permanent use. Thus, we held the defendants were charged with knowledge of the easement and were not innocent purchasers of the area designated for the park.

Based on the foregoing, we conclude that Minot Christian and Minot Amusement were charged with making inquiry as to the extent of the acquiescence by Nash Finch in the use of the property as a theater. As such, they cannot claim a lack of knowledge of the extent of the acquiescence by Nash Finch. This conclusion is further supported by the correspondence between Nash Finch and Minot Amusement relative to seeking the consent of Nash Finch to sell the theater site to Minot Christian. See footnote 5.

█ Minot Christian also asserts there is no difference between the use of the land as a theater and as a church. Implicit in this argument is Minot Christian's assertion that the "most fair and most just sharing of benefits and burdens would result" if the land were allowed to be used as a church.

We have no doubt that the benefits originally intended to be secured by the restrictive covenants were to assure that compatible retail businesses would complement Nash Finch's grocery store. Although the originally perceived benefits may have been, to some degree, reduced by the use of

the land as a theater, we do note that during its operation the theater was open seven days a week. The record reflects that the grocery store was originally open until 10:00 p. m., but is now open twenty-four hours a day. The use of the building as a theater did, to some degree on a daily basis, complement Nash Finch's grocery store.

The testimony of Rev. Duane E. Trulin reflects that worship services at the church were conducted on Sundays at 9:45 a. m., and 6:30 p. m., and Bible School was conducted on Sundays at 11:00 a. m. Rev. Trulin also testified that special services were conducted on Wednesday at 7:30 p. m. and that on some occasions films were shown on Friday nights. Consistent with the purpose of finding compatible retail businesses to complement the grocery store, the hours and frequency of the use of the building by Minot Christian reflect a pattern which we do not believe is similar to the hours and frequency of the building's use as a theater. Further, we also note that so far as the record reflects there has been no substantial transformation of the shopping center so as to defeat the purpose of the covenant.

The defendants assert that the most beneficial use of the theater site is a place of public assembly and also point to the extensive cost of remodeling the theater to accommodate other retail businesses and to be attractive on the real estate market. This assertion, in essence, points to the financial infeasibility of transforming the building from a theater to a building which would accommodate a retail operation.

█ However, the mere fact that the removal of the restrictive covenant will greatly enhance the value of land will not justify its removal. *Parrish v. Newberry,* 279 S.W.2d 229 (Ky.1955). Neither will mere pecuniary loss prevent the enforcement of a restrictive covenant. *Johnson v. Robertson,* 156 Iowa 64, 135 N.W. 585 (1912).

█ Minot Christian also asserts that Allen is estopped to object to the use of the

land as a church because the contract for deed between Allen and Minot Amusement stated that the Minot Amusement could use the property "for the rendering of services." Thus, Minot Christian asserts that to the extent there is a commercial attribute in organized religion, it is for the rendering of services. Minot Amusement points out the similarity of uses of the theater site by themselves and Minot Christian and asserts that the use is of the "same kind and nature," and therefore Minot Amusement asserts that the consent given by Nash Finch to use the premises as a theater should be construed to include the use of the premises as a church. However, this argument overlooks the fact that Minot Amusement and Minot Christian had constructive knowledge of the limitations in the restrictive covenant and a duty of inquiry as to the extent of the acquiescence by Nash Finch to the use of the site as a theater.

Based on the foregoing, we conclude that the district court abused its discretion in denying injunctive relief and determining that the restrictive covenant was a nullity. In reaching this decision we believe that the following comments by Justice Mathews in *Bucklew v. Trustees Bayshore Baptist Church*, 60 So.2d 182, 183–84 (Fla.1952), which in part were also recited in *Hall v. Church of the Open Bible*, 4 Wis.2d 246, 89 N.W.2d 798 (1958), are appropriate:

"We fully recognize the high calling of the Church. In this enlightened age, churches are not only desirable but are necessary for the happiness and contentment of the people. We know of no community in this state where churches do not exist. We doubt that any families would locate in a community without churches. The high calling of religious organizations and churches does not give them any more right to set covenants at nought than any other organization. In such matters, if there can be any degree of obligation, a more sensitive adherence to the demands of plighted faith might be expected of those professing a high duty to obligations and an example to others.

"The law applies with equal force to the good and the bad, and we are not authorized to change it even though we agree with the high purpose and desirability of the accomplishments of any particular organization."

The last issue raised relates to the easement for the "purpose of parking of cars by patrons of the motion picture theater," which was contained in the contract for deed and the warranty deed between Allen and Minot Amusement. Allen and Nash Finch assert that the change of use of the Oak Park Theater terminates the easement running with that property for that use. Minot Christian and Minot Amusement assert that the trial court properly determined that the parking easement was appurtenant to the theater building and not dependent upon any particular use of the building.

Our consideration of the first issue leads us to conclude that it is consistent with the purpose of the restrictive covenant that the occupiers of the theater building have an easement to use the parking lot. However, a condition of the easement is that the occupiers of the theater building must be in compliance with the restrictive covenant.

For reasons stated, the injunction should have been granted and the judgment of the district court is reversed and the case is remanded with directions to issue the injunction.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.