WALLWORK LEASE & RENTAL COMPANY, INC., Plaintiff and Appellee,

v.

L. Martin LeBUS and Winchester Industries, Inc., Defendants,

and

Air Freight Express, Defendant and Appellant.

Civ. No. 11379.

Supreme Court of North Dakota.

Aug. 20, 1987.

Nilles, Hansen & Davies, Fargo, for plaintiff and appellee; argued by Leo F.J. Wilking.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, Moorhead, for defendant and appellant; argued by John P. Dosland.

LEVINE, Justice.

Air Freight Express, Inc. ["Air Freight"] appeals from a district court judgment awarding damages against it as a guarantor on two leases. We modify the judgment and remand with instructions.

In February 1984 Wallwork Lease & Rental Company ["Wallwork"] entered into agreements to lease two airplanes to L. Martin LeBus for a period of five years. The aircraft were to be used by Air Freight. A corporate officer executed guarantees of the leases on behalf of Air Freight. Due to a corporate reorganization, Air Freight returned the aircraft to Wallwork after eight monthly payments had been made on each lease. Wallwork sold the aircraft and subsequently sued Air Freight on its guarantees.[1]

The trial court determined that Air Freight was liable on its guarantees and awarded damages pursuant to the default provisions in the leases. The trial court interpreted the default provisions as allowing Wallwork to recover the unpaid rentals to the date of sale of the aircraft, all future rentals reduced to present value, all expenses of the sale, and the "salvage value" at the end of the term of the leases. The court credited the amounts received by

Wallwork from sale of the aircraft and entered judgment against Air Freight in the amount of $92,990.50. Air Freight has appealed.

The sole issue on appeal is whether the trial court misconstrued the default provisions of the leases. The relevant provision is Paragraph 9(2):

"2) *By Default.* If this Lease be terminated by default on the part of the Lessee, Lessee shall not be released from any liability to Wallwork for Lessee's failure to make any payments required by this Lease, or for Lessee's failure or inability to perform the conditions of this Lease, and Lessee hereby waives all claims for injuries suffered through or loss caused by any repossession of said Aircraft. Lessee shall remain liable for rentals for the balance of the term of the Lease. If this Lease be so terminated, Wallwork, in its discretion, may dispose of such Aircraft, at such prices as may be obtainable by Wallwork, and Lessee shall be liable to Wallwork for any deficiency between the sale price of the Aircraft and its depreciated value, as determined by Schedule A."

Each lease includes a "Schedule A," which provides that a set amount of each monthly payment is designated as depreciation on the aircraft. The depreciated value of the aircraft can thus be calculated at any given time by multiplying the monthly depreciation "factor" times the number of payments due, and subtracting that amount from the original price of the aircraft.

We believe the following statutes provide the appropriate guidelines for interpreting the contract at issue:

"*9–07–02. Language of contract governs if clear.*—The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."

---

1. Wallwork also sued L. Martin LeBus, the lessee, and Winchester Industries, Inc., another guarantor. LeBus declared bankruptcy, indefinitely staying the proceedings against him. The

court ordered the file closed as to LeBus. A default judgment was entered against Winchester Industries, Inc.

"*9–07–04. Intention ascertained from writing alone if possible.*—When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter."

"*9–07–06. Contract interpreted as a whole.*—The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others."

■ If the intention of the parties can be ascertained from the writing, the interpretation of the contract is a question of law, and this court will independently examine the contract to determine whether the district court erred in its interpretation of it. *Zitzow v. Diederich*, 337 N.W.2d 799, 801 (N.D.1983); *Ray Co., Inc. v. Johnson*, 325 N.W.2d 250, 252 (N.D.1982). We conclude, upon review of the contractual provisions in dispute, that the intention of the parties, so far as is necessary for decision, can be determined from the writing alone, and therefore the legal effect of the instrument is a question of law for this court to decide. *Zitzow v. Diederich, supra*, 337 N.W.2d at 801.

The trial court, while claiming in its findings of fact to give effect to the agreement "in its entirety," awarded damages based upon calculations which wholly ignore the last sentence of Paragraph 9(2). The court held that Paragraph 9(2) allowed Wallwork to recover all future lease payments. The court's interpretation, however, ignores the specific provision governing damages upon Wallwork's invocation of its right to sell the aircraft.

■ The first portion of Paragraph 9(2) provides that the lessee is not released from its obligations under the lease, and is specifically liable for rentals for the balance of the lease term. The last sentence of Paragraph 9(2), however, provides a special rule to determine damages if Wallwork exercises its option to dispose of the aircraft: Wallwork is entitled to recover the deficiency between the sale price and the agreed-upon depreciated value, as determined by Schedule A. When Wallwork elected to sell the aircraft, the first portion of Paragraph 9(2) remained effective to the extent that Air Freight is liable to Wallwork for unpaid rentals in the interim between default and sale. Upon the date that Wallwork exercised its option to sell the aircraft, however, its right to collect future rentals ceased and its recovery was governed by the last sentence of Paragraph 9(2). This construction gives effect to every part of Paragraph 9(2).

■ Thus, Wallwork is entitled to the following elements of damages: unpaid rentals to the date of sale; the difference between the sale proceeds and the depreciated value calculated as of the date of sale; and incidental expenses of the sales.[2] Because the various dollar amounts are uncontested, we can "plug in" the figures and calculate damages.

For the aircraft designated as # N9874M, the monthly payments under the lease were $2,258.19. At the time of sale 17 payments were due, of which 8 had been paid, leaving 9 payments delinquent. Pursuant to Schedule A, $1,253.33 of each monthly payment was designated as depreciation. The depreciated value at the time of sale can be calculated as follows:

| $94,000.00 | Original price |
| −21,306.61 | Depreciation (17 × $1,253.33) |
| $72,693.39 | Depreciated value |

**2.** Wallwork contends that this result penalizes it for reselling the planes, and that it would be in a better position if it had kept the aircraft until the end of the five-year term, collected all rentals from Air Freight during that time, and then sold the planes. Lest lessors be tempted to forestall sale of the property until the end of the lease term in order to collect accumulated rentals, we would remind them that, whichever contractual remedy they choose to exercise, they are still required to mitigate damages. *See In-*

*dustry Financial Corp. v. Redman*, 383 N.W.2d 847 (N.D.1986).

We note also under Paragraph 9(1), the lessee has the right to cancel the lease if it purchases the aircraft "for cash at the original value less the depreciation set forth in Schedule A." Thus, the lease provides the same rate of compensation for Wallwork when the lessee cancels and sells the aircraft, as when Wallwork sells after default by the lessee.

For the aircraft designated as # N9896M, the monthly payments were $2,546.47. At the time of sale 19 payments were due, of which 8 had been paid, leaving 11 payments delinquent. Pursuant to Schedule A, $1,413.33 of each monthly payment was designated as depreciation. The depreciated value at the time of sale can be calculated as follows:

| | |
|---|---|
| $106,000.00 | Original price |
| − 26,853.27 | Depreciation (19 × $1,413.33) |
| $ 79,146.73 | Depreciated value |

Wallwork received $75,000 for aircraft # N9874M and $80,000 for aircraft # N9896M upon resale. Because the sale proceeds for each aircraft exceeded its depreciated value, there is no deficiency for which Air Freight is liable under the terms of the lease.[3] The remaining elements of damages can be calculated as follows:

| | |
|---|---|
| $20,373.71 | Delinquent payments on # N9874M |
| 28,011.17 | Delinquent payments on # N9896M |
| 9,249.83 | Sale expenses |
| $57,584.71 | Total damages |

It will be for the trial court upon remand to award interest and costs. The judgment of the district court is modified to reflect calculation of damages as outlined above, and the case is remanded for further proceedings consistent with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**3.** Nor do we conclude that Air Freight is entitled to a credit for the excess which Wallwork received above the depreciated value. Because this was a lease, not a sale, and because the lease does not expressly provide that the lessee is entitled to a credit for the excess proceeds beyond the depreciated value, we believe the intent of the parties was to require Wallwork to account for the proceeds of the sale only up to the depreciated value.