**DAN'S SUPER MARKET, INC.,**
Plaintiff–Appellee,

v.

**WAL–MART STORES, INC.,**
Defendant–Appellant.

No. 94–1123.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1994.

Decided Oct. 26, 1994.

John W. Morrison, Bismarck, ND, argued, for appellant.

John F. Bonner, III, Minneapolis, MN, argued (Terri E. Bentson, Minneapolis, MN, and Christine A. Hogan, Bismarck, ND, on the brief), for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and STEVENS,* District Judge.

LOKEN, Circuit Judge.

Wal–Mart Stores, Inc. ("Wal–Mart"), appeals an injunction enforcing a restrictive covenant in favor of Dan's Super Market, Inc. ("Dan's"), which owns the site next to Wal–Mart's store in Bismarck, North Dakota. The district court construed the covenant as precluding Wal–Mart from selling many grocery items that are typically available in modern discount stores. We conclude that the covenant must be strictly construed against Dan's, a party to the covenant seeking to restrict a third party's use of real property. Accordingly, we reverse.

## I.

The Wachter Real Estate Trust owned two adjacent parcels of land suitable for retail store development. Dan's wished to purchase one parcel to build and operate a supermarket, but it insisted on a covenant restricting food store competition on the adjacent site. The Trust was willing to subject the second parcel to a restrictive covenant, but it wanted to retain the ability to sell the second parcel to a discount store developer. In November 1987, Dan's purchased the first parcel, and the two parties executed and duly recorded the Declaration of Restrictive Covenant here at issue, in which the Trust agreed to restrict use of the adjacent parcel for twenty years.

In 1989, Wal–Mart purchased the adjacent parcel and built and opened a Wal–Mart discount store on the site. Though Wal–Mart concedes it had notice of the restrictive covenant, it soon began selling food and grocery items, such as coffee, canned fruit juices, various snack items, dry pasta, canned meat products, candy, nuts, and soft drinks. Dan's then commenced this action to enjoin Wal–Mart from selling food and grocery items in violation of the restrictive covenant. After both parties had conducted discovery, Dan's moved for summary judgment.

The district court concluded that the covenant was a valid restriction on use of the Wal–Mart site that Dan's may enforce against Wal–Mart. The court found that the parties to the covenant, Dan's and the Trust, intended "to prevent the location of a grocery store competitor" on the adjacent site. To effectuate this intent, the covenant prohibited a discount store operator, such as Wal–Mart, from selling food and grocery items other than snack foods and lunch counter items. Though it found these merchandise restrictions ambiguous and observed that other discount stores sell items similar to those being sold by Wal–Mart, the district court held that, when Dan's opens a grocery store on its site,[1] it will be entitled to injunctive relief

> prevent[ing] the sale by [Wal–Mart] of packaged ground coffee, large containers of canned meats, fish or poultry, uncooked pasta products, pickles and other merchandise not falling within the description of snack items, nuts, or candy. [S]ales of soft drinks (soda pop) are not prohibited [because] a diet soft drink, without any nutritional value or purpose, [is not] a food item.

> \* \* \* \* \* \*

> [The court] does not know how to classify 'crackers' or 'cold cereals' but would agree that canned sardines or beef jerky could qualify as a snack food. Fruit juices are a mystery class also.

Wal–Mart appeals this grant of injunctive relief. The law of North Dakota governs. We review the district court's interpretation of North Dakota law and its grant of summary judgment *de novo*. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111

---

\* The HONORABLE JOSEPH E. STEVENS, JR., Chief Judge of the United States District Court for the Western District of Missouri, sitting by designation.

1. Dan's has yet to open a grocery store on its parcel but asserted at oral argument that construction was imminent.

S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1291 (8th Cir.1993).

## II.

 Under North Dakota law, "[r]estrictions and reservations as to the use of land conveyed are not favored, but when clearly established they will be given force and effect." *Anderson v. Marshall–Malaise Lumber Co.,* 66 N.D. 216, 263 N.W. 721, 723 (1935), followed in *Allen v. Minot Amusement Corp.,* 312 N.W.2d 698, 702 (N.D.1981). In general, documents creating interests in real property are interpreted using the same rules of construction that apply to contracts. *See, e.g., Royse v. Easter Seal Soc'y for Crippled Children and Adults, Inc.,* 256 N.W.2d 542, 544 (N.D.1977) (grant of an easement); *Kermott v. Montgomery Ward & Co.,* 80 N.W.2d 841, 844 (N.D.1957) (commercial lease). Those rules have been codified in Chapter 9–07 of the North Dakota Century Code. One rule is that the intent of parties to a written contract should be discerned from the writing alone. *See* N.D.Cent.Code § 9–07–04 (1993). That seems particularly appropriate when construing the terms of a recorded restrictive covenant that the covenantee, Dan's, seeks to enforce against Wal–Mart, a successor-in-interest to the covenantor. The construction of a written contract is an issue of law. *See Wallwork Lease & Rental Co. v. LeBus,* 411 N.W.2d 89, 91 (N.D.1987) (lease); *Miller v. Schwartz,* 354 N.W.2d 685, 688 (N.D.1984) (oil and gas interest).

 Thus, we must focus on the precise language of the Declaration of Restrictive Covenant, which provides in relevant part:

Seller hereby covenants and agrees [that the adjacent site] shall not be used in connection with ... the sale of food or grocery items, specifically including, but not limited to, the wholesale or retail sale of dairy products, bakery goods, meat, poultry, fish, frozen goods, produce, and shelf grocery items; provided, however, that this restriction shall not apply to ... any sale of those items of miscellaneous small food snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises, which are sold by discount store operators such as Shopko, K–Mart, Woolworth's, Target, or similar discount store operators, including but not limited to the sale of nuts, candy, similar snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises.

This covenant employs one of the common methods of restricting business competition, a limitation on the sale of designated types of merchandise. *See generally Annot.,* 97 A.L.R.2d 4, 43, 65–71 (1964). The district court had little difficulty discerning the broad purpose of this covenant. It found that "the intent of the parties [Dan's and the Trust] was to permit the sale of the restricted lots to a discount store operator, while affording the store to be built by [Dan's] protection from a grocery sales competitor."

Wal–Mart does not dispute this finding of fact. But it argues that other ambiguities (to be discussed in detail below) render the entire covenant unenforceable. We disagree. Like the district court, we conclude that the Supreme Court of North Dakota would find this core prohibition sufficiently "clearly established" to be enforceable under its prior decisions in *Allen* and *Anderson.* Thus, once Dan's opens a grocery store on its parcel, the covenant will prohibit Wal–Mart, for example, from selling all or part of the adjacent property to a grocery store operator, or from adding a full-blown grocery store to its discount store operations. *Compare Glen Burnie Shopping Plaza, Inc. v. Schreiber Bros., Inc.,* 220 Md. 303, 152 A.2d 807 (1959).

As the district court recognized, the difficulty in this case comes when we turn to the covenant's detailed restrictions on the classes of merchandise that may be sold on Wal–Mart's site. After broadly prohibiting the sale of virtually all food items, the covenant states:

provided, however, that this restriction shall not apply to ... any sale of those items of miscellaneous small food snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises, which are sold by discount store operators such as Shopko, K–Mart,

Woolworth's, Target, or similar discount store operators, including but not limited to the sale of nuts, candy, similar snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises.

As drafted, this portion of the covenant is either redundant and inconsistent, or grammatically unsound. The first operative clause allows sales of "miscellaneous small food snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises." To that is attached, by a comma, a second clause referring to discount store operators. If the latter is a dependent clause, limiting the exception in the first clause to discount stores, then the portion of the second clause beginning "including, but not limited to" is redundant; more significantly, it creates an inconsistency because the first clause limits the exception to a list of enumerated items, while the second declares that a somewhat expanded list is only illustrative.[2] On the other hand, if the second clause is independent of the first, the words "which are" that begin that clause are grammatically awry.

By relying on different portions of this poorly drafted proviso, the parties and the district court suggest three very different interpretations. Dan's argues that the first clause is an absolute limitation on what a discount store operator such as Wal–Mart may sell, and that the phrase "other items which are intended to be consumed upon the premises" modifies the entire first clause. Therefore, Dan's argues, Wal–Mart may only sell lunch counter items and "small food snack items" in single serving containers. The district court rejected that construction, concluding that "the phrase 'intended to be consumed upon the premises' relates only to 'sandwiches or other items.'" We agree.

The district court concluded that the second clause of the proviso is dependent upon the first, and therefore the covenant prohibits Wal–Mart from selling all food and grocery items except "miscellaneous small food snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises." While that is a plausible interpretation of the ambiguous proviso, it poses significant problems. First, as the court's opinion makes clear, it requires the district court to serve as a glorified store manager, refereeing endless disputes over what consumers consider "small food snack items." Even if the parties to the covenant had intended a court of equity to play this role, we would decline the invitation. Second, the district court's interpretation ignores that portion of the second clause which declares that the listed food items are only illustrative. This violates the North Dakota canon of construction that a contract must be construed "so as to give effect to every part if reasonably practicable." N.D.Cent.Code § 9–07–06. Third, the district court's interpretation compromises the Trust's intent to reserve a meaningful right to sell the adjacent parcel to a discount store operator. To be successful, a discount store operating on that site must be permitted to offer the types of merchandise being sold by its competitors—other discount stores in the Bismarck community. For these reasons, we reject the district court's interpretation as inconsistent with both the text and the purpose of the covenant.

Wal–Mart suggests a third interpretation of the proviso. Giving dominant effect to the second clause, Wal–Mart urges that it be permitted to sell those types of food and grocery items "which are [typically] sold by discount store operators such as Shopko, K–Mart, Woolworth's, Target, or similar discount store operators." This is the most plausible construction of the ambiguous proviso. In the first place, it is consistent with the plain meaning of the second clause, were that clause standing alone. And this interpretation does not strip the first clause of the proviso of all effect. That clause remains applicable to any user of Wal–Mart's parcel other than a discount store. For example, a diner, a lunch counter, an ice cream shop, a newsstand, or a tobacco store would be permitted under the first clause to sell "miscellaneous small food snack items, prepared sand-

---

2. The words, including but not limited to, ordinarily mean that a list is incomplete and only illustrative in nature. *See Americana Healthcare*

*Centers—Minot and Fargo v. North Dakota Dep't of Human Services,* 510 N.W.2d 592, 594 (N.D. 1994).

wiches, or other items which are intended to be consumed upon the premises." Thus, unlike the district court's interpretation, Wal–Mart manages to give effect to each significant part of the ambiguous proviso. As noted above, construed in this manner the proviso is grammatically unsound, but that defect would be cured by making one small but significant change to the language of the proviso, the addition of three words after the first clause to clarify the relationship between the first and second clauses:

> this restriction shall not apply to ... any sale of those items of miscellaneous small food snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises, *[or those items]* which are sold by discount store operators such as Shopko, K–Mart, Woolworth's, Target, or similar discount store operators, including but not limited to the sale of nuts, candy, similar snack items, prepared sandwiches, or other items which are intended to be consumed upon the premises.

In addition to being more compatible with the text of the proviso, Wal–Mart's proposed interpretation is also more consistent with the covenantor's intent, as found by the district court, and it reduces and objectifies the district court's on-going task of deciding what food items Wal–Mart may sell. And perhaps most importantly, this interpretation is consistent with two well-established principles—that covenants restricting the use of real property are to be strictly construed,[3] and that any uncertainty in an instrument should be interpreted against the party causing it, in this case Dan's, which took part in drafting the covenant. *See Mueller v. Stangeland,* 340 N.W.2d 450, 454 (N.D.1983); N.D.Cent.Code § 9–07–19 (1993).

Rather than declare the entire covenant so ambiguous that it is unenforceable, we conclude that the covenant should be construed as Wal–Mart suggests, with the above three words added to the proviso. So construed, the covenant permits Wal–Mart to sell grocery items currently being sold by competing discount store operators but not to convert any portion of its store into a full-blown grocery store operation.

For the foregoing reasons, we reverse the declaratory and injunctive relief granted in response to Dan's motion for summary judgment. We note that Dan's complaint did not allege that Wal–Mart is selling food or grocery items not generally sold by other discount store operators in Bismarck. We have now generally construed the covenant, and we agree with the district court that issues of specific equitable relief should await the opening of a supermarket on Dan's parcel. In these circumstances, the judgment of the district court is reversed and the case is remanded with the suggestion that the complaint be dismissed.

---

**3.** *See Almacs Inc. v. Drogin,* 771 F.Supp. 506, 509 (D.R.I.1991); *Restatement of Property* § 526 (1944); 5 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* ¶ 674, at 60–88.1 & n. 3 (1994); 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 187 (1965). This doctrine is reflected in North Dakota law in the "clearly established" requirement of *Allen* and *Anderson.*